**Larry W. NEPTUNE, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 95–324 C.

United States Court of Federal Claims.

July 22, 1997.

Guy J. Ferrante, Falls Church, VA, for plaintiffs.

Armando O. Bonilla, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom was Assistant Director James M. Kinsella, Director David M. Cohen, Assistant Attorney General Frank W. Hunger, for defendant. Lt. Col. Steven J. Pecinovsky, General Litigation Division, U.S. Air Force, of counsel.

## OPINION

MOODY R. TIDWELL, III, Judge.

This case arises out of defendant's renewed motion to dismiss for failure to state a claim or, in the alternative, for judgment on the administrative record, filed April 25, 1996, and plaintiffs' renewed cross motion for summary judgment, filed October 9, 1996. There are two substantive issues in dispute, as well as a jurisdictional argument raised in the motion to dismiss. The first substantive issue is whether the Air Force's promotion system violates controlling statutes and regulations. The second issue, concerning only Major Neptune, centers on whether the 1985 Selection Board's consideration of 192 allegedly ineligible officers was in violation of 10 U.S.C. § 619. After careful consideration, the court denies defendant's motion to dismiss and plaintiffs' cross motion for summary judgment, and grants defendant's motion for judgment on the record.[1]

## FACTS

Plaintiffs are former Majors in the United States Air Force who were twice passed over for promotion to the grade of Lieutenant Colonel. Thereafter, plaintiffs were involuntarily separated from the military upon completion of the twenty-year service period required for retirement pay eligibility. An Air Force Major is required to retire after the officer "has failed of selection for promotion to the next higher regular grade for the second time." 10 U.S.C. § 632(a) (1994). Major Neptune was considered and not selected for promotion to the grade of Lieutenant Colonel by the 1985, 1986, 1987, 1989, and 1990 Selection Boards, and was involuntarily retired on October 1, 1990.[2] Major Lorenzen was non-selected by the 1985, 1986, 1987, and 1989 Selection Boards and was involuntarily retired on November 1, 1989. Major Hoogstra was non-selected by the 1985, 1986, and 1987 Selection Boards and was involuntarily retired on November 1, 1989.

Each Air Force Selection Board selects officers using a "panel system." On a typical

---

**1.** Plaintiffs' claim is not time barred by the three-year statute of limitations, 10 U.S.C. § 1552(b), because of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. § 525, which tolls a statute of limitations for a service member's period of active duty. However, the Soldiers' and Sailors' Civil Relief Act does not toll the time calculation for laches. *See Cornetta v. United States,* 851 F.2d 1372, 1378 (Fed.Cir.1988). Defendant contends that because plaintiff waited over five years from his non-selection to bring a claim, he should be barred by the doctrine of laches. However, it is not necessary to decide this issue because, as discussed below, defendant's actions did not violate § 619.

**2.** The Selection Board did not convene in 1988.

board, generally comprised of about forty to forty-five members, the officers each serve on smaller subordinate panels of about five members each. Each panel member independently scores the records distributed to the panel and recommends officers for promotion.

Before scoring the records, the panel members engage in a practice scoring exercise to acquaint each member with the scoring methodology. The members score sample records on a six to ten point scale, in half-point increments. The practice results are compared and the Selection Board reviews scoring inconsistencies and variations to set scoring standards.

After the practice scoring exercise is completed, a reverse social security number method is employed to distribute blocks of twenty records to each panel. The reverse social security number method is intended to ensure a random distribution of records among the panels. Each panel member separately scores the twenty records. The scores for each record are totaled and then aligned in a relative order of merit within the records scored by that panel. For example, if each of the five members on a panel gave "record A" a score of 7, the total score for that record would be 35. If the total score given by the same panel to "record B" is 34, "record A" would rank above "record B" in the panel's order of merit.

Overall, the Selection Board will promote a predetermined number of officers. Each panel recommends a proportionate number of officers for promotion. The number of officers selected by each panel under this system directly depends on the number of records reviewed by the panel. Thus, if the Selection Board considers 1000 records, and it is predetermined that 100 officers will be promoted (a 10% promotion rate), and a particular panel reviews 250 of those records, then that panel will recommend 25 officers for promotion.

To determine which individuals will be recommended for promotion, the panel's quota is applied to its order of merit. Individuals are chosen sequentially from the order of merit. This process continues until such time as the remaining available promotion positions are exceeded by the number of officers with a given score. All records ranked at this cut-off score are deemed in the "grey zone." Thus, in our previous example, if a panel reviews 250 records, and eight officers have a score of "10", nine have a score of "9.5", and ten have a score of "9", then those officers with a score of "9" would be in the grey zone. Grey zone records are then rescored to determine a ranking order among them. This ranking is employed to choose the remaining candidates to be recommended by the panel.

At intervals during the above scoring process, the Selection Board draws sample grey zones to review for consistency among the panels. After a panel scores at least 240 records, an initial order of merit for the panel is generated. Applying a fraction of the panel's share of the quota to the initial order of merit, a sample grey zone is drawn. The sample grey zones from each panel are then reviewed by the Selection Board's Secretariat and the president to determine if the quality of records in each panel's grey zone is the same. This quality review includes repeating a review of records within two points above and below each panel's grey zone after each additional group of approximately 240 records are scored by the panels. For example, if a panel's grey zone is at a score of 40, then the records receiving scores ranging from 38 to 42 by that panel are reviewed by the Selection Board's Secretariat and the president.

In addition, the board president uses a computer model to ensure score consistency among the panels. This model, used by the 1981–1991 boards, includes the use of a "Projected Order of Merit" (POM). The POM is based on an analysis of the prior year's promotion selection results, weighing various factors of selection criteria to predict how an actual record would fare under the prior board's analysis.

The board president compares the actual order of merit from the current board against the computer-generated order of merit from the POM. If the board president, using this quality review method, believes that a scoring inconsistency exists, records

may be directed to a second panel for rescoring. The decision to recommend candidates for promotion, however, stays with the Selection Board as a whole. The POM is solely a management tool and is used to ensure: (1) consistency in scoring, (2) an equal quality distribution of records among the panels, and (3) that only the best qualified officers are recommended for promotion.

Each board member does not personally review every record. Relying on the preboard training given to each board member, the quality review conducted by the Selection Board's Secretariat and president, and their individual experiences as panel members, the board members certify that the promotion process has selected the best qualified officers for promotion. Each member of the 1986 and 1987 Lieutenant Colonel promotion boards signed the board reports, certifying: (1) that the board had carefully considered the record of each officer whose name was furnished to it, and (2) that, in the opinion of a majority of the members of the board, the officers recommended for promotion by the board were the best and fully qualified for promotion.

Prior to convening each Selection Board, the eligibility criteria, method of selection, promotion quota, and statistical data are submitted to and approved by either the Secretary of the Air Force or the Assistant Secretary of the Air Force for Manpower and Reserve Affairs. At the conclusion of each Selection Board, the board formally submits to the Secretary of the Air Force the statutorily required written report, stating the results of the Selection Board's session.

## DISCUSSION

### I. Standard of Review

#### A. Defendant's Motion to Dismiss for Failure to State a Claim

■ The Supreme Court set forth the standard for evaluating motions to dismiss for failure to state a claim in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Conley* provides that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that [plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Id.* at 45–46, 78 S.Ct. at 102 (footnote omitted). Furthermore, a court must construe the allegations in the complaint favorably to plaintiffs. *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir. 1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). This court has held that dismissal under RCFC 12(b)(4), dismissal for failure to state a claim, can only be granted if the defendant is able to establish an "insurmountable bar" to plaintiffs' relief. *Chavez v. United States*, 15 Cl.Ct. 353, 356 (1988) (citing *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979)).

The present case deals largely with issues of statutory interpretation, which are questions of law, rather than fact. The court finds that plaintiffs' statutory interpretation theory is sufficient to make plaintiffs' claim for relief colorable. Regardless of whether their arguments are adopted, plaintiffs clearly have stated a claim upon which relief could be granted. Therefore, defendant's motion to dismiss for failure to state a claim is denied.

#### B. Judgment on the Administrative Record and Summary Judgment

According to RCFC 56.1(a), the same standards apply for a judgment upon the record as for summary judgement under RCFC 56. Further, judgment upon the record is proper under the same circumstances as summary judgment. *See Rose v. United States*, 35 Fed.Cl. 510, 512 (1996). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Legal issues of statutory and regulatory interpretation are amenable to resolution by summary judgment. *See Hill v. United States*, 945 F.2d 1529, 1530 (Fed. Cir.1991) (summary judgment proper when a case "turns on a legal issue—the proper interpretation of the pertinent statutes and regulations."), *rev'd on other grounds*, 506 U.S. 546, 113 S.Ct. 941, 122 L.Ed.2d 330 (1993). In evaluating a motion for summary

judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Id.* at 248, 106 S.Ct. at 2510. Not until the moving party has met its burden of showing entitlement to judgment as a matter of law does the burden shift to the non-moving party to provide facts establishing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Neither party may discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975).

When the parties file cross motions for judgment upon the record and/or summary judgment, as in the instant case, the court must evaluate each motion on its own merits. The fact that both parties argue in favor of summary judgment and allege that there are no genuine issues of material fact for trial does not relieve the court of its duty to decide whether summary judgment is appropriate. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir. 1987)). Cross motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other must necessarily be allowed. *Rains v. Cascade Indus., Inc.* 402 F.2d 241, 245 (3d Cir.1968). The court must "draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors*, 812 F.2d at 1391.

As noted, this case is before the court on defendant's motion to dismiss or, in the alternative, defendant's motion for judgment on the administrative record, and plaintiffs' cross motion for summary judgment. Plaintiffs seek correction of their military records. Specifically, plaintiffs ask the court to direct the Secretary of the Air Force to: (1) delete from their records all references to their promotion non-selections and involuntary retirements; (2) correct their records to reflect continuous active duty; and (3) reinstate them to active duty. There are two issues to be decided. The first issue, concerning all three plaintiffs, is whether the Selection Boards' use of a panel system to review a candidate's records for promotion is legal. Plaintiffs contend that the procedures used by the Air Force violate 10 U.S.C. §§ 616(c), 617(a) and Department of Defense (DOD) Directive 1320.9. The second issue to be decided concerns only Major Neptune. Major Neptune contends that the 1985 Selection Board considered 192 allegedly ineligible officers in violation of 10 U.S.C. § 619, rendering his nonselection invalid.

## II. Legality of the Panel System for Determining Air Force Promotions

### A. Statutory Authorization

█ The Code specifies that military officers are to be considered for promotion by "selection boards." 10 U.S.C. § 611(a) (1994). A Selection Board may not recommend an officer for promotion unless "(1) the officer receives the recommendation of a majority of the members of the board; and (2) a majority of the members of the board finds that the officer is fully qualified for promotion." 10 U.S.C. § 616(c) (1994). Furthermore, § 617(a) requires:

> a written report, signed by each member of the board, containing a list of the names of the officers it recommends for promotion and certifying (1) that the board has carefully considered the record of each officer whose name was furnished to it under section 615 of this title, and (2) that, in the opinion of a *majority* of the members of the board, the officers recommended for promotion by the board are best qualified for promotion to meet the

needs of the armed force concerned (as noted in the guidelines or information furnished the board under section 615(b) of this title) among those officers whose names were furnished to the selection board.

10 U.S.C. § 617(a) (1994) (emphasis added). In addition, DOD Directive 1320.9 centralizes the selection of officers. It states that:

To ensure fairness in the promotion selection process ... a single board shall be convened to consider all eligible officers in the same grade and competitive category for promotion....

DOD Directive 1320.9(D)(1)(a) (Sept. 18, 1981). Because the Air Force Selection Board system splits the candidates' records among different panels, plaintiffs argue that the selection process violates the DOD directive and the applicable statutes.

Plaintiffs argue that the Air Force's current procedure, whereby promotion determinations of the panels are accepted by the board as a whole, is not an acceptable means of satisfying the demands of a "majority" determination. Plaintiffs read into the statute an implied limitation on the manner in which the members of the Selection Board may be permitted to carry out their assigned responsibilities. According to plaintiffs, an officer may not be recommended for promotion unless he receives the recommendation of a "majority of the members of the board," and that the term "majority" contemplates deliberative participation on the part of each and every board member in each promotion decision. The court does not agree and is in accord with *Small v. United States*, 36 Fed.Cl. 43 (1996), *vacated in part on other grounds*, 37 Fed.Cl. 149 (1997).

Congress has recognized the Air Force's longstanding approach of using panels. *See* H.R.Rep. No. 97–141, 97th Cong., 1st Sess., at 12 (1981) (mentioning the Air Force's use of a panel system), *reprinted in* 1981 U.S.C.C.A.N. 35. Approval is also seen in Congress's recent review of the Air Force panel system, conducted as part of a larger study of promotional practices in the Air Force. One of the study's principal objectives was the review of officer promotion programs and Selection Board procedures to ensure that existing regulations and procedures "are in compliance with statutory requirements." Committee on Armed Services, Report on the Conduct of Proceedings for the Selection of Officers for Promotion in the U.S. Air Force, S.Rep. No. 102–482, at 6 (1992). Although the study cited numerous shortcomings, it did not note the panel system as violating 10 U.S.C. §§ 616(c) and 617(a).

Furthermore, a DOD review submitted to the Senate Armed Services Committee (SASC) entitled "Report on Officer Promotion Programs in the Department of Defense" indicates awareness of the panel system. Under the heading of "Internal Board Procedures," within the section devoted to the Air Force, the Assistant Secretary of Defense explained:

*Promotion boards are divided into one or more panels depending on the number of officers in the eligible population.* In the case of field grade boards, the board support personnel distribute the records of the eligible officers in and above the promotion zone (IPZ/APZ) *randomly among the panels....* *The deliberative work of the board consists of individual board members reviewing the records assigned to that panel and assigning scores* ... from six to ten in half-point increments.... Once a record has been *scored by a panel*, it will not be seen again unless a split vote has occurred or the record is part of the grey resolution.... When [a split vote] occurs, the record is brought back to *the panel* for discussion.... Once the panel finalizes the score awarded to a particular officer, the board recorders retire the record (*it is not passed to another panel*)....

Office of the Assistant Secretary of Defense, Force Management & Personnel, U.S. Dep't of Defense, Report on Officer Promotion Programs in the Department of Defense 35 (1991) (emphasis added). Congress's knowledge of the panel system and its failure to criticize it in the report, implies approval of the Air Force panel system. *See Small*, 37 Fed.Cl. at 156 (stating that "[g]iven the absence of any adverse commentary, it is fair to assume that the panel system—and the procedures that that system engages—were not

seen to be violative of the statutory responsibilities assigned to selection boards under 10 U.S.C. §§ 616(c) and 617(a).").

### B. Methods Employed by the Panels

Plaintiffs allege that even if the panel system is not per se invalid, the manner in which the Air Force uses the panels is invalid. Specifically, plaintiffs complain that the random distribution of servicemen's records by reverse social security number does not ensure equal distribution of record quality between panels, and is therefore invalid.

■ The decision to promote an officer, as well as the method by which the decision is made, implicates highly discretionary questions of military judgment and expertise which civilian courts may not second-guess. *See Murphy v. United States*, 993 F.2d 871, 872–74 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994); *Sargisson v. United States*, 913 F.2d 918, 921–22 (Fed.Cir.1990); *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511–12 (D.C.Cir.1989); *Bunch v. United States*, 33 Fed.Cl. 337, 340 (1995); *Rice v. United States*, 31 Fed.Cl. 156, 165–67 (1994), *aff'd*, 48 F.3d 1236 (Fed.Cir.1995). The United States Court of Appeals for the Federal Circuit recently examined the justiciability of military personnel decisions in *Murphy*, 993 F.2d at 872–74. The *Murphy* court set forth the well-established doctrine that "[j]usticiability ... depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'" *Id.* at 872 (quoting *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962)). Emphasizing the deference that must be afforded in military personnel decisions, the appellate court restated the Supreme Court's admonishment to courts in the area of judicial interference in military personnel decisions.

> [T]here are "thousands of ... routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." We have emphasized that judicial review is only appropriate where the Secretary's

discretion is limited, and Congress has established "tests or standards" against which the court can measure his conduct. Unless such a test or standard is provided, courts must abstain.

*Murphy*, 993 F.2d at 873 (citations omitted).

Addressing the issue of erroneous military records, the *Murphy* court further noted that "the possibility of erroneous records does not transform an otherwise nonjusticiable action into a reviewable one.... 'A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit.'" *Id.* (quoting *Sargisson*, 913 F.2d at 922). Although *Murphy* dealt specifically with the evaluation of reserve officers' records, the court's holding logically applies to regular officers as well.

In the present case, the Air Force's decisions on how to select officers for promotion present the court with nonjusticiable questions. *See Bunch*, 33 Fed.Cl. at 340. The relevant statutes provide no tests or standards to evaluate the decisions of the Air Force in making promotion determinations. *See Murphy*, 993 F.2d at 872–74; *Voge*, 844 F.2d at 780 ("A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959))). The selection and composition of boards and the promotion decisions rendered by those boards involve many factors about which the judiciary lacks the specialized knowledge and expertise relevant for review, and thus are nonjusticiable. The possibility of inequality of record distribution does not make the present issue justiciable.

### III. The 1985 Selection Board's Inclusion of 192 Officers Whose Third Year Anniversary Date Was Three Days After the Selection Board Convened.

■ Only one plaintiff, Major Neptune, raised a challenge under 10 U.S.C. § 619 with the Air Force Board of Correction of Military Records, and therefore the issue at bar is relevant only to Major Neptune. Un-

der 10 U.S.C. § 619, a Major "may not be considered for selection for promotion ... until he has completed ... [t]hree years" of service in grade. 10 U.S.C. § 619(a)(2)(A) (1994 & Supp. I 1995). In other words, if an officer was promoted to Major on January 1, 1982, the officer may not be considered for a promotion to Lieutenant Colonel until the officer's third year anniversary, or January 1, 1985. In the present case, 192 officers whose third year anniversary date was November 1, 1985 were reviewed by the 1985 Selection Board which convened on October 28, 1985, and adjourned on November 8, 1985. Plaintiff argues that the board was convened three days prior to the three-year anniversary and therefore none of the 192 officers should have been considered. Their consideration, plaintiff argues, had a direct impact on his own chance of promotion.

Defendant argues, however, that the "consideration" of candidates is not complete until the Selection Board members certify the promotions pursuant to 10 U.S.C. § 617(a). Defendant "believe[s] it is fair to state that any officer eligible for the board can be thought of as being 'considered for selection' at all times between [the] two dates." Memorandum from Richard J. Vogt, Promotion Division Chief, Directorate of Personnel Program Management, U.S. Air Force, to the Air Force Board of Correction of Military Records 2 (Aug. 13, 1991) (AFBCMR Record at 73). Certification of the Selection Board proceedings did not take place until November 8, 1985, several days after the officers' third year anniversary. Thus, defendant asserts that there was no violation of § 619.

The court agrees. Each Selection Board meets for several days. Although records are scored by the members at the beginning of the board, candidates are not immediately selected or non-selected for promotion. Not until all records have been scored, and the promotion quota is computed, can it be determined which scores will be high enough for promotion. The selection process is not complete until a report is prepared "containing a list of the names of the officers [the board] recommends for promotion," 10 U.S.C. § 617(a), and the report is submitted to the Secretary of the Air Force.

Plaintiff argues that defendant's attempt to equate "consideration" with "certification" is distorted. The court does not agree. The term "consideration" refers to "(1) observation, contemplation ... (2) *continuous* and careful thought: *deliberation;* attention." *Webster's Third New International Dictionary* 484 (1976) (emphasis added). Consideration for promotion is a process, not a single act. It cannot be that the only part of the promotion process that equates to "consideration" is the actual scoring of the officer's record. The scoring of a record, standing alone, is meaningless. The entire process, as a whole, constitutes the consideration period.

Although scoring of at least some of the 192 officers' records by the Board undoubtedly occurred before November 1, 1985, *consideration* of the records could not be complete until all the records were scored, and the report was prepared and submitted to the Secretary of the Air Force on November 8, 1985. This occurred after the 192 officers' third year anniversary. Therefore, *no* violation of 10 U.S.C. § 619 occurred.

## CONCLUSION

The court denies defendant's motion to dismiss for failure to state a claim. In light of the foregoing discussion, the court finds that the Air Force panel system does not violate the applicable statutes and regulations, and that the 1985 Selection Board did not violate 10 U.S.C. § 619. Therefore, the court allows defendant's motion for judgment on the administrative record, and denies plaintiffs' cross motion for summary judgment.

**IT IS SO ORDERED.**