Laura A. WOTOWIC–McGILL, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–769C.

United States Court of Federal Claims.

Nov. 16, 1998.

Randal M. Barnum, Benicia, California, for plaintiff.

Linda A. Halpern, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, Assistant Director James M. Kinsella, all of the U.S. Department of Justice, Washington, D.C., and Major Joginder S. Dhillon, Air Force Legal Services Agency, U.S. Department of the Air Force, Arlington, Virginia, for defendant.

OPINION

BRUGGINK, Judge.

Plaintiff is a former Air Force Captain who was twice passed over for promotion to major and thereafter was involuntarily separated from the military pursuant to 10 U.S.C. § 632(a) (1994).[1] In this suit, plaintiff seeks review and reversal of a decision by the Air Force Board for Correction of Military Records ("AFBCMR" or "Board") denying her

---

1. Section 632(a), Title 10, United States Code, requires that regular captains, like plaintiff, who are twice considered but not selected for promotion to major be involuntary separated.

application for: (i) removal of a June 1994 Officer's Performance Record ("OPR"); (ii) reversal of plaintiff's nonselection for promotion; and (iii) military back pay and benefits measured from the date of involuntary separation. The case is now before the court on cross-motions for judgment upon the administrative record pursuant to RCFC 56.1. The facts are drawn from the administrative record. RCFC 56.1; *see Neptune v. United States,* 38 Fed.Cl. 510, 513 (1997); *Rose v. United States,* 35 Fed.Cl. 510, 512 (1996).

## BACKGROUND

Laura A. Wotowic–McGill joined the United States Air Force as a captain on September 28, 1992.[2] She was first assigned as a Charge Nurse in the Coronary Care Unit ("CCU") with the 60th Medical Group at Travis Air Force Base Hospital, California. Throughout her assignment in the CCU, Major Maryanne Kolesar was her immediate supervisor.

As determined by an internal Air Force investigation, a sexually hostile environment prevailed at the CCU as early as 1991. Among the contributing elements were three staff-made albums known as the "Bart Books." These journals contained sexually explicit pictures cut from various magazines and pamphlets to which CCU staff members would add degrading and juvenile statements regarding themselves or others within the CCU. Included in one of these books is a picture, specifically directed at Captain McGill, which shows the manipulation of a woman's breast and, a caption, which states "Laura gets help pumping breasts." Participation in these books was actively encouraged by Major Kolesar. In addition to the "Bart Books," several sexual novelties, supplied by current and former CCU personnel, were displayed in the unit. These included various items shaped like male and female genitalia. Along with the "Bart Books," these items were openly displayed to the entire CCU staff.

Plaintiff alleges that Major Kolesar added to the atmosphere by making inappropriate sexual comments to her and to the CCU staff as a whole. Specifically, plaintiff asserts that during and after her pregnancy, Major Kolesar accused her of "coming into the Air Force to get pregnant." Further, plaintiff contends that on more than one occasion, during morning reports to the CCU staff, Major Kolesar referred to herself as a "non-practicing virgin."[3]

In August 1993, Captain McGill began a six week maternity leave to give birth to her daughter. For several months following her leave, she continued to breast feed her daughter. This required Captain McGill, on occasion, to use a breast pump during her shifts at the CCU.

On September 28, 1993, Major Kolesar issued an Officer Performance Report ("OPR") regarding Captain McGill's performance as a Charge Nurse during the period from September 28, 1992 thru September 27, 1993. In section VI of this report, entitled "RATER OVERALL ASSESSMENT," Major Kolesar included the following comments:

Enforces subordinate development through on-the-job training. Points out unique patient physical assessment findings so staff can become familiar with characteristics in relation to the diagnosis. Excellent at explaining military bearing and job responsibilities to junior staff. Logically thinks through critical patient care and personnel management situations, reaching conclusions based on facts. Recommend Regular commission.

Thereafter, Captain McGill's Senior Rater, Colonel Robert W. Gilmore, prepared a Promotion Recommendation Form for the 1993B Major Central Selection Board. Under section IV, entitled "PROMOTION RECOMMENDATION," Colonel Gilmore included the following comments:

**2.** Plaintiff had prior service as a United States Navy and Air Force Reserve as a nurse.

**3.** Defendant has neither denied nor agreed in its Counter–Statement of Facts that such statements were made. Defendant only disputes the num-

ber of times plaintiff actually heard such statements. In a statement submitted as part of the Air Force Equal Opportunity and Treatment investigation, Major Kolesar stated that she may have repeated the phrase at work.

—Knowledgeable/experienced critical care nurse instructor; easily transitioned from Navy to AF Nurse Corps

—Received Navy commendation letter for teaching enlisted corpsmen to perform wartime hospital duties in support of Operation DESERT SHIELD/STORM

—Qualified 30 aeromedical evacuation crew members in Advanced Cardiac Life Support treatment protocols

—Trained new nurse to complex CCU environment; individuals orientation completed in record time

—Analytical thinker who strives for perfection

—While acting Nurse Manager, can troubleshoot management and clinical issues with positive outcomes

—Ensure 24–hour unit staff coverage and maximum use of resources; patient care during busy, turbulent periods never compromised.

Job performance reflects she is ready for 0–4! Promote.

Section IX, entitled "OVERALL RECOMMENDATION," includes three boxes labeled "Definitely Promote;" "Promote;" and "Do Not Promote." Colonel Gilmore checked the box labeled "Promote." The Major Central Selection Board convened on December 6, 1993 to consider Captain McGill and others for promotion to the grade of Major. Captain McGill was not selected.

On February 9, 1994, more than six months after the birth of her daughter, plaintiff's body fat was measured at thirty-nine percent, seven percent above the Air Force standard. As a result, Captain McGill was directed to enter the Air Force's Weight Management Program ("WMP"). On the same day, plaintiff was informed that her AF Form 108, necessary for the WMP, would be ready to be picked up on February 10, 1994. Captain McGill failed to pick up the form the following day.

On February 14, 1994, Lieutenant Colonel Cordell, plaintiff's commander, issued a Letter of Counseling ("LOC") to Captain McGill regarding her failure to pick up AF Form 108. On February 20, 1994, plaintiff filed a written rebuttal to the LOC. In her rebuttal, Captain McGill states that her mother had suffered from a "Pulmonary Embolism" on that same day and, therefore, "picking up AF Form 108 was the last thing on [her] mind."

On March 7, 1994, Captain McGill and Major Kolesar were involved in a verbal confrontation regarding the LOC and plaintiff's participation in the WPM. The conversation concluded with plaintiff requesting an in-house transfer to the Obstetrical/Perinatal Unit. On April 11, 1994, Major Kolesar removed plaintiff from her Charge Nurse position and assigned her to a Staff Nurse position still in the CCU.

On May 5, 1994, Major Kolesar presented plaintiff with a five page Performance Feedback ("Feedback"), dated April 22, 1994, which listed positive and negative aspects of Captain McGill's performance in the CCU in addition to suggestions on ways plaintiff could improve her skills:

1. Job Knowledge: CLINICAL:.... One area of concern that the Critical Care Nurse Specialist and I had was your ability to perform hands on care of/setting up for the Swanz Ganz catheter. She felt that you had some difficulty deciding what to infuse through which ports on a couple of occasions....

MANAGERIAL: You were given the AF form 2682, Nurse Manager Skills Assessment checklist to complete in Mar. 93. You returned it to me for my initial review on Nov. 93....

Other responsibilities that you have been assigned include duty schedule coordinator. When you accomplished a duty schedule I never had any recommendations for revisions.... You did, however, have difficulty turning two of them in on time....

2. Leadership Skills:

....

Since our last feedback session we have talked about various situations and ways that communication took place in a less than favorable manner. Some examples are: when you were angry about the admission of a study patient to step down who was not anticoagulated. You were upset that the admission took place creat-

ing all the paperwork and inconvenience to the patient. This was a good point: however as we talked, communication with the research nurse could have been less abrasive. . . . For example: I did let you know in October 93 that you would have at least 3 OPR's due around the same date in December 93. . . . You waited until the blue folders with the suspense dates arrived in your mailbox. . . . [I]t became a great struggle to get you to meet the suspense's [sic]. . . .

. . . .

4. Organizational Skills: You seem to have the greatest difficulty in this area and it affects the other areas of your performance. . . . You have difficulty arriving for duty on time. You have been late anywhere from 5 minutes to one hour. . . . You were late for your appointment with the squadron commander. You blamed me when you told Lt. Col Bullis that I said you HAD to be in his office at 0800 hours. What in fact I said to you was that you had an appointment with Lt. Col Bullis at 0800 hours the next day. I also handed you a note to this affect. You made no comment to me that the time was not good for you. Nor did you call to let him know you would be late. . . .

With regard to Captain McGill's transfer request, the Feedback concludes:

You have asked for a transfer to the maternal child module. As I explained to you, when we get more staff and a sufficient number of level III's I will be glad to meet with you [sic] wishes. . . . I also removed you from the charge nurse position. I did keep the charge nurse job description on your current Promotion Recommendation.

On June 14, 1994, six weeks after plaintiff received the Feedback, Captain McGill filed a complaint with the Air Force Equal Opportunity and Treatment ("EOT") program. In the EOT complaint, plaintiff alleged that she was sexually discriminated against and harassed by Major Kolesar. In support of her complaint, Captain McGill pointed to the Bart Books, the novelties and the sexual comments made by Major Kolesar as discussed above.

On June 24, 1994, ten days after plaintiff filed her EOT complaint, Major Kolesar, Colonel Mary E. Maxse, Deputy of Nursing Operations, and Colonel David Boggs, Commander, 60th Medical Group, completed an OPR regarding Captain McGill's performance period from September 28, 1993 through May 22, 1994. Section III of the OPR, entitled "JOB DESCRIPTION," listed Captain McGill's duty title as "Staff Nurse Coronary Care Unit." This description was accurate as of the time of the rating, although for most of the period Captain McGill was a Charge Nurse in the CCU. In section VI, entitled "RATER OVERALL ASSESSMENT," Major Kolesar included the following comments:

—Delegates appropriate assignments when responsible as shift charge nurse; safe care delivery promoted

—Shares clinical knowledge with peers and subordinates; efforts help the novice become familiar with the critical care unit environment

—Requires specific deadlines and close follow-up in order to accomplish assigned additional duties

—Tasked to type [up] defined criteria for quality improvement study regarding frequently occurring problems associated with telemetry monitoring; completed and briefed staff on same at unit staff meeting

—collected survey data for primary researcher for article, "Preventing Occupational Illness and Injury: Nurse Practioners as Primary Care Providers," published in American Journal of Public Health, April 1994

—Continue to groom for Charge Nurse position

In section VI, entitled "ADDITIONAL RATER OVERALL ASSESSMENT," Colonel Maxse included the following comments:

—As one-to-one nurse she provides individualized patient care in a competent safe manner

—Teaches patients about their disease process and medications prescribed to control symptoms; prepares them for discharge and safe care

—Efforts toward improving organizational skills would enhance duty performance as well as clinical abilities in crisis situations; Charge Nurse potential with continued guidance and mentoring

In August 1994, plaintiff transferred to the Obstetrician/Perinatal Unit. Thereafter, Captain McGill's Senior Rater, Colonel Leonard M. Randolph, Jr., prepared a Promotion Recommendation Form for the 1994A Major Central Selection Board. Even though Captain McGill was a staff nurse at this time, section III, entitled "JOB DESCRIPTION," listed her duty title as "Charge Nurse Coronary Care Unit." Under section IV, entitled "PROMOTION RECOMMENDATION," Colonel Randolph included the following comments:

—Knowledgeable/experienced critical care nurse instructor

—Received Navy commendation letter for teaching enlisted corpsmen to perform wartime hospital duties in support of Operation DESERT SHIELD/STORM

—Qualified 30 aeromedical evacuation crew members in Advanced Cardiac Life Support protocols

—Trained new nurse to complex CCU environment; individuals orientation completed in record time

—Analytical thinker who strives for perfection

—While acting Nurse Manager, can troubleshoot management and clinical issues with positive outcomes

—Ensure 24–hour unit staff coverage and maximum use of resources; patient care during busy, turbulent periods never compromised.

Job performance reflects she is ready for 0–4. Promote.

In section IX, entitled "OVERALL RECOMMENDATION," Colonel Randolph checked the box labeled "Promote."

On August 22, 1994, the Major Central Selection Board convened to consider Captain McGill and others for promotion to the grade of Major. For the second time, Captain McGill was not selected. As a result, plaintiff was notified by Colonel Randolph that she would be involuntarily separated on April 30, 1995.

On August 22, 1994, Captain Steven L. Quackenbush, Chief of Social Actions, completed his investigation of plaintiff's EOT complaint against Major Kolesar. Captain Quackenbush concluded that Major Kolesar's action of allowing the Bart Books and the sexual novelties to be viewed at work violated Air Force EOT policy and constituted sexual harassment. On August 31, 1994, these findings were confirmed after legal review by Major Christopher Clark, Deputy Staff Judge Advocate. As a result, Major Kolesar was reprimanded and counseled for her actions. Also included in a legal review memorandum, dated August 31, 1994 and signed by Major Clark, is the following statement: "Capt. Quackenbush identifies the delay in Complainant's transfer from the CCU and her most recent OPR as possible reprisals. The case file is silent on this issue." On November 14, 1994, Captain Quackenbush recorded his follow-up interview with plaintiff regarding her complaint: "Spoke with Capt. McGill. She said things were going okay, she hadn't had any reprisal action taken against her, but she was passed over."

On April 30, 1995, Captain McGill was released from active duty for nonselection and transferred to the Reserves. She had over eight years of active duty.

On November 9, 1995, plaintiff filed an application to the AFBCMR pursuant to 10 U.S.C. § 1552. In it, she alleged that Major Kolesar inserted negative performance evaluations into the 1994 OPR in retaliation for plaintiff's filing of the EOT complaint. Plaintiff requested the Board to: 1) void the June 1994 OPR and remove it from her records; 2) reverse her nonselection for promotion to major by the 1994A Selection Board and her resulting separation from the Air Force; and 3) compensate her for lost pay and benefits measured from the date of involuntary separation.

On January 3, 1997, before the AFBCMR rendered its decision, plaintiff filed suit in the United States District Court for the Eastern District of California. On April 21, 1997, the AFBCMR denied the application. The district court subsequently ordered the matter

transferred to this court on December 22, 1997.

### DISCUSSION

██ Plaintiff claims that she was improperly separated from the Air Force and that the AFBCMR erred in denying her claims for reinstatement and back pay. Such claims are within the court's jurisdiction based on the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994). *See United States v. Testan,* 424 U.S. 392, 397–400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.1990); *Sanders v. United States,* 219 Ct.Cl. 285, 297, 594 F.2d 804, 810–11 (1979). Plaintiff has the burden of demonstrating that the board decision was "arbitrary, capricious, contrary to law or unsupported by substantial evidence." *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986); *see Doty v. United States,* 53 F.3d 1244, 1252 (Fed.Cir.1995). The scope of review of such claims is narrow. In the context of an allegation that an officer has been involuntarily released because of an error in the promotion process, the court may reverse only if the challenged record or board proceedings reflect a "legal error or a misstatement of a significant hard fact." *Germano v. United States,* 26 Cl.Ct. 1446, 1460 (1992) (citing *Hary v. United States,* 223 Ct.Cl. 10, 17, 618 F.2d 704, 708 (1980)); *see also Sanders,* 219 Ct.Cl. at 301, 594 F.2d at 813 (finding that in reviewing board decisions, this court's power to review extends only to cases where plaintiff alleges that the board decision was based on a legal error or a "gross material error of fact"). The plaintiff must also provide evidence of a nexus or link between the error or injustice and the adverse action. *See Hary,* 223 Ct.Cl. at 15, 618 F.2d at 706–07.

██ Plaintiff's primary contention is that the Board's decision that the negative comments in the June 1994 OPR were not retaliatory was clearly wrong. Plaintiff further asserts that it was this alleged negative OPR which eventually led to her non-selection for promotion and her involuntary separation from the Air Force. Specifically, plaintiff directs the court's attention to the "RATER OVERALL ASSESSMENT" section of the OPR where Major Kolesar wrote that plaintiff "requires specific deadlines and close follow-up in order to accomplish assigned additional duties."

The AFBCMR determined that a review of the record did not support such claims of retaliation. We agree. As the Board pointed out, the problems addressed by Major Kolesar in the OPR were similar to those comments she made about plaintiff in her written Performance Feedback on May 5, 1994. Well in advance of the EOT complaint, in other words, Major Kolesar had already expressed concerns about plaintiff's timeliness of performance. The feedback also included criticisms regarding plaintiff's organizational skills: "You seem to have the greatest difficulty in this area and it affects the other areas of your performance." Major Kolesar's comments regarding plaintiff's abilities in the pre-EOT Performance Feedback and the OPR are thus consistent and support the conclusion that Major Kolesar's judgment of plaintiff's performance was not affected by the filing of the EOT complaint.

During oral argument, plaintiff alleged that the negative comments in the Feedback are examples of the bias Major Kolesar had against plaintiff even before the EOT complaint. Plaintiff argued that this bias was generated by Major Kolesar's resentment towards plaintiff's pregnancy and use of a breast pump during working hours. Our review of the record does not support this contention, however. The Air Force found, during its internal EOT investigation, that there was insufficient evidence that Major Kolesar ever criticized plaintiff for becoming pregnant. Additionally, plaintiff returned from pregnancy leave prior to her 1993 OPR evaluation. Yet, Major Kolesar's comments do not exhibit any bias towards plaintiff's pregnancy or her use of a breast pump during working hours. The overall tone of the 1993 evaluation was very positive.

Major Kolesar's concerns about plaintiff, both before and after the EOT complaint, are supported by statements of plaintiffs co-workers. As part of the EOT investigation, several CCU staff members, identified by plaintiff to support her EOT complaint, were interviewed. The comments of those ques-

tioned regarding plaintiff's ability to perform her job are remarkably consistent in addressing both plaintiff's positive and negative qualities. Although most of those interviewed found her "knowledgeable" as a nurse, they also stated that she "didn't seem organized" and had "trouble prioritizing her work," thereby substantiating Major Kolesar's remarks.

Plaintiff's allegation of retaliatory conduct is further undercut by what Major Kolesar did not include in the disputed OPR. Major Kolesar made no reference in the OPR to plaintiff's "difficulty arriving for duty on time," as mentioned in the Performance Feedback. Nor did she refer to plaintiff being placed on the Air Force's Weight Management Program or to the Letter of Counseling she received for failing to pick up the proper forms for the program. If Major Kolesar had been eager to retaliate against plaintiff, for any reason, she could have done so by including these shortcomings in the OPR.

*Other Alleged Errors*

### 1. *Staff Nurse vs. Charge Nurse*

■ The contested OPR covered plaintiff's employment from September 28, 1993 through May 22, 1994. For most of this period, plaintiff was assigned as a Charge Nurse. Following plaintiff's request to transfer, Major Kolesar removed her from this position on April 11, 1994 and reassigned her to a Staff Nurse still in the CCU. Major Kolesar stated that the move was necessary because she did not want plaintiff to become involved in projects and then be transferred in "midstream." On June 24, 1994, Major Kolesar issued an OPR regarding plaintiff's performance from September 28, 1993 through May 22, 1994. Section III of the OPR, entitled "JOB DESCRIPTION," listed Captain McGill's duty title as "Staff Nurse Coronary Care Unit." Plaintiff asserts that the Board, therefore, did not consider plaintiff's previous duty as a "Charge Nurse" in evaluating her for promotion.

Air Force Regulation ("AFR") 36–10, which provides instructions on how to prepare OPRs, states that the approved duty title is fixed as of the "closeout date" of the OPR. Plaintiff was a Staff Nurse as of the closeout date of the OPR, May 22, 1994. Major Kolesar, therefore, entered plaintiff's proper job description.

During oral argument, plaintiff alleged that it was error for Major Kolesar to conclude her comments on the OPR with "[c]ontinue to groom for Charge Nurse position," without including a comment explaining the reasons for the position change. Plaintiff argued that this comment not only ignored plaintiff's prior duties as a Charge Nurse but also led the members of the promotions Board to believe that plaintiff was removed from her Charge Nurse position because of performance problems rather than due to her transfer request. These arguments are somewhat inconsistent. In any event, we find them unpersuasive. They are speculative at best. A review of the record would have shown the Board nothing negative beyond the explicit statements in the Performance Feedback and the OPR. In the absence of any procedural error or clearly erroneous statement of "fact," the court will not presume that the Board was engaged in irrelevant speculations.

### 2. *Plaintiff's Role with Regards to the Published Article*

Plaintiff asserts that the challenged OPR mischaracterized her as a "data collector" instead of "co-author" with respect to her participation in an article published in *The American Journal of Public Health.* In section VI, entitled "RATER OVERALL ASSESSMENT," Major Kolesar included the following comment about plaintiff: "Collected survey data for primary researcher for article, 'Preventing Occupational Illness and Injury: Nurse Practioners as Primary Care Providers,' published in American Journal of Public Health, April 1994."

Plaintiff claims that this is an understatement. She directs the court to a letter to the Board, dated July 18, 1996, written by her counsel, Mr. Randal M. Barnum. In the letter, Mr. Barnum states that plaintiff "played a major role in designing and conducting the research project from beginning to end." This comment by the attorney is

not evidence. Even if it were, the Board's determination that Major Kolesar's characterization of plaintiff's role was not prejudicial is not clearly erroneous.

### 3. *Comments in the OPR*

Plaintiff argues that comments in the OPR not only contradict statements about her nursing abilities but are also incorrect. Specifically, plaintiff alleges that Major Kolesar's comment, "efforts toward improving [plaintiff's] organizational skills would enhance [her] duty performance as well as clinical abilities in crisis situations," is contrary to other statements in the OPR that recognize plaintiff's ability to "save lives." Additionally, plaintiff claims that the comment that she "requires specific deadlines and close follow-up in order to accomplish assigned addition duties" is not accurate.

An OPR lists both the positive and negative attributes of an officer. Reading these comments individually and highlighting the fact that they are somewhat in tension hardly constitutes proof that one is clearly erroneous. Further, as shown above, the Board found that Major Kolesar's comments were supported by the Performance Feedback and the comments of plaintiff's co-workers. In the Performance Feedback, Major Kolesar lists several instances where plaintiff either had difficulty finishing assignments or waited until the last minute and "it became a great struggle" to complete them on time. This observation was shared by some of plaintiff's co-workers who stated in their interviews that plaintiff had "trouble prioritizing her work." Thus, we find the Board's determination supported by substantial evidence.

### 4. *Semi-annual Reports Not Provided*

Plaintiff argues that she was entitled to receive semi annual reports from Major Kolesar regarding her performance pursuant to AFR 36–10. By not receiving these reports, plaintiff alleges that she was denied the benefit of having them before the Pro-

motions Board during her evaluations. The Board determined that the portion of these regulations requiring semi-annual reports had been deleted and was no longer in effect as of plaintiff's active duty date, September 28, 1992. Plaintiff has not challenged this conclusion with any specific evidence or citation.

### 5. *Performance Feedback May Be Included in the OPR*

Plaintiff contends that, pursuant to AF Pamphlet 36–6, it was improper for the Performance Feedback to be used or considered in her OPR. To support her allegation, plaintiff relies on a statement in the Pamphlet that the feedback session "is not the formal assessment for the record." Nothing in this language limits the rater in preparing the ratee's formal assessment, however. Rather, it would appear logical for the rater to use information learned during these sessions in preparing the ratee's formal assessment.

### CONCLUSION

The record below does not reflect a legal error or a "gross material error of fact." *Sanders,* 219 Ct.Cl. at 301, 594 F.2d at 813. The decision of the AFBCMR in denying relief, therefore, was not arbitrary, capricious, contrary to law or regulation, or unsubstantiated by substantial evidence. In addition, we conclude from all the evidence in the record [4] that plaintiff has not demonstrated any nexus between any alleged error or injustice and her failure of promotion. See *Hary,* 223 Ct.Cl. at 15, 618 F.2d at 706–07. The court therefore grants defendant's motion for judgment on the administrative record and denies plaintiff's motion for judgment on the administrative record. The Clerk is directed to dismiss the complaint. No costs.

---

4. To demonstrate that plaintiff failed to provide a nexus between any alleged error and the adverse action by the Board, defendant has attached to its reply brief a document showing the promotion rate for Air Force nurses for various years including 1993 and 1994. This document was not part of the administrative record before the Board and, therefore, will not be considered by this court.