Walter C. ROSE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–374C.

United States Court of Federal Claims.

May 21, 1996.

Mark L. Waple, Fayetteville, North Carolina, for plaintiff.

Geoffrey C. Cook, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director Richard E. Rice, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion for judgment upon the record, filed pursuant to RCFC 56.1. At issue is whether an Army Physical Evaluation Board ("PEB") acted in a manner that was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence when it determined that plaintiff was not entitled to disability pay because his heart condition had existed prior to, and was not aggravated by, his service. For the reasons set forth below, the court grants defendant's motion.

## FACTS

In 1979, after twenty years of service, Major Walter C. Rose retired from the Army. The following year, Rose was diagnosed with hypertrophic cardiomyopathy ("IHSS"), a hereditary, progressive heart disease which results in a build-up of muscle, inhibiting the flow of blood from the heart. Since his retirement from the service in 1979 to 1991, Rose worked in real estate marketing and as a teacher at a community college in North Carolina.

In January 1991, Major Rose was recalled to active duty in the Army in connection with a nationwide recall of retirees in support of Operation Desert Shield and Desert Storm. Upon arrival for duty at Fort Meade, Maryland, Rose received a physical examination. The military doctor confirmed the IHSS diagnosis, found Rose unfit for overseas deployment and placed sedentary restrictions on his assigned duties. In a section on the report of medical history, labelled "Statement of Examinee's Present Health and Medications Currently Used," the doctor noted that Rose's "Health is Considered to be Good!" (Def.'s App. Vol. A at 47.)

Major Rose was placed in charge of the Family Support Center for returning casualties. After it became apparent that casualties from the Gulf War would be few, and none would be evacuated to Fort Meade, Rose was placed in charge of the Family Welcome Center. His duties were substantially the same for both centers and included supervising temporary staff, providing information to families, planning a victory celebration, and coordinating general office maintenance. *Id.* at 56–60.

On June 2, 1991, Rose suddenly became ill and was hospitalized with a diagnosis of bronchitis and sinusitis. On July 10, he was again hospitalized, but this time for heart problems diagnosed as obstructive hypertrophic cardiomyopathy. After his second stay at Walter Reed Army Medical Center, Rose was reassigned to Womack Army Medical Center at Fort Bragg, near his home in

North Carolina while the Army determined Rose's fitness for active duty.

An Army Medical Evaluation Board ("MEBD"), consisting of two physicians and the Acting Deputy Commander for Clinical Services, evaluated Rose's medical condition in August 1991, identified the IHSS as first diagnosed in 1980, and referred his case to a Physical Evaluation Board to determine his fitness for duty. Rose contested the findings of the informal PEB and received a formal PEB at Walter Reed on February 13, 1992. Both PEBs included a physician, a field grade officer, and a field grade personnel officer. *See* Army Regulation 635–40, ¶ 4–17(b). The formal PEB determined that Rose was unfit for active duty and should return to retirement status without further disability rating. The PEB concluded that Rose's condition of hypertrophic cardiomyopathy existed prior to service and had not been aggravated by service; therefore, he was not entitled to disability benefits.

Plaintiff filed a complaint in this court on May 30, 1995, alleging that the PEB's decision denying disability benefits was arbitrary and capricious, and that his involuntary recall to active duty violated military regulations. Defendant then filed a motion for judgment upon the record, claiming that the PEB's decision was based on substantial evidence and should not be disturbed.

## DISCUSSION

### I. Judgment Upon The Record

■ According to RCFC 56.1(a), the same standards apply when evaluating a judgment upon the record as those for summary judgment under RCFC 56. Further, judgment upon the record is proper under the same circumstances as summary judgment. Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over facts that might affect the outcome of the suit will preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for judgment upon the record, as with summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. In addition, the court must "view the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Hodosh v. Block Drug Co.,* 786 F.2d 1136, 1141 (Fed.Cir.), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986).

■ Plaintiff opposes defendant's motion, claiming that there are material facts in dispute. The first alleged issue of material fact involves whether the decision of the PEB is supported by substantial evidence. However, sufficiency of evidence is a question of law and is therefore appropriate for disposition on defendant's motion. *See Kirwin v. United States,* 23 Cl.Ct. 497, 503 (1991). Second, plaintiff alleges that his recall to active duty violated Army regulations. As will be discussed in Section IV, this claim has no merit.

### II. Standard of Review in Disability Pay Cases

■ The standard of review for military disability retirement pay claims is well-settled in this court. The court's review of an individual's particular disability rating is limited to determining whether the reviewing board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *O'Neil v. United States,* 6 Cl.Ct. 317, 319 (1984); *Dzialo v. United States,* 5 Cl.Ct. 554, 561 (1984) (quoting *Craft v. United States,* 210 Ct.Cl. 170, 179, 544 F.2d 468, 473 (1976)); *Stephens v. United States,* 174 Ct.Cl. 365, 372, 358 F.2d 951, 955 (1966). The Federal Circuit explained that "the standard of review does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983) (emphasis in original). Plaintiff bears the heavy burden of proving by clear and convincing evidence that the board's decision was arbitrary and capricious. *de Cicco v. United States,* 230 Ct.Cl. 224, 233, 677 F.2d 66, 68 (1982) (quoting *Newman v. United*

*States*, 185 Ct.Cl. 269, 276, 1968 WL 9153 (1968)); *Kirwin*, 23 Cl.Ct. at 502.

### III. The PEB Decision

█ The court's review focuses on the PEB's conclusions that: 1) Rose was physically unfit for active duty due to his IHSS heart condition; and 2) Rose's disability existed prior to his recall and was not permanently aggravated by his service. The PEB stated:

> Your condition of hypertrophic cardiomyopathy renders you unfit due to functional limitations which allow you to perform only light duties. This condition is considered congenital and in your case, had been diagnosed prior to your return to Active Duty in February 1991. This condition is considered, therefore, to have existed prior to your entry into service (EPTS). EPTS conditions can only be compensated if they were permanently aggravated by the performance of military duties. The board concludes that the duties that you performed as outlined in your affidavit and in the additional statements presented to the Board, did not aggravate your condition. No evidence was presented to indicate that [sic] nature of these duties that you were required to perform would have aggravated your condition in accordance with Cecil's Textbook of Medicine. Therefore, we conclude that your current unfitting condition is the result of the natural progression of your pre-existing disease. The Board, therefore, recommends that you revert to retired status without entitlement to disability benefits.

(Def.'s App. Vol. A at 35.) Plaintiff specifically contends that this decision was arbitrary and capricious because the board ignored evidence demonstrating that Rose's service duties aggravated his heart disease beyond natural progression. After a thorough review of the administrative record, the court holds that the PEB's determination that Rose's service did not aggravate his condition satisfies the substantial evidence standard.

The medical evidence presented to the PEB includes: 1) Rose's medical records from his initial physical upon reporting to Fort Meade in February 1991; 2) the MEBD evaluations following his hospitalizations in June and July 1991; and 3) a letter from Rose's cardiologist in North Carolina describing Rose's condition in January 1992. Each of these sources identifies Rose's condition as progressive hypertrophic cardiomyopathy. The report from Rose's initial physical in January 1991, includes a profile limiting Rose's physical activities. The MEBD review identified Rose's condition as progressive IHSS, which is potentially life threatening and may worsen. Further, the MEBD recommended that Rose was unfit for duty and referred its findings to the PEB. Rose's cardiologist also identified the condition as cardiomyopathy, with a high risk of sudden death. There is no evidence in any of the medical records indicating that Rose's duties aggravated his preexisting condition.

Plaintiff further offers several affidavits from his military superiors and supervisors as evidence of service aggravation. These statements, presented to and considered by the PEB, attest to Major Rose's hard work and dedication to his duties in the spring of 1991. They also detail the sudden deterioration in Rose's health at the beginning of June 1991. Colonel Menser, one of Rose's superiors, wrote that:

> [i]t must be assured that the combination of the long hours, the emotional impact of the multitude of phone and personal inquiries, the record heat in the Baltimore area during the spring of 1991 (the center was not air-conditioned) and your personal concern as to the success of your mission, contributed to your illness and hospitalization on June 2, 1991.

(Def.'s App. Vol. A at 61.)

Army Regulations ("AR") instruct and guide the PEB in its review of individual cases. Several regulations directly address the subject of service aggravation. According to AR 635–40, Physical Evaluation for Retention, Retirement, or Separation, ¶ 4–19(e)(3)(b), "[i]f the soldier's military service makes the condition worse or hastens the natural progression of the condition beyond the normal or anticipated rate had he or she not been exposed to such service, a finding of

aggravation must be considered." In order to determine that there is no service aggravation, the PEB must include specific findings of natural progression "based upon well-established medical principles." AR 635–40 ¶ 3–2(3). The importance of medical evidence is stressed further as "[c]onsideration must also be given to accepted medical principles in deciding whether a medical impairment was the result of, or aggravated by, military service...." AR 635–40 ¶ 4-19(e)(2).

The PEB concluded that Rose's duties, as presented by plaintiff in his affidavit and the additional statements of his superiors to the board, did not aggravate his condition. "No evidence was presented to indicate that the duties [Rose was] required to perform would have aggravated [his] condition in accordance with Cecil's Textbook of Medicine." (Def.'s App. Vol. A at 13.) While the statements from his military superiors demonstrate Rose's excellence in service in a busy work environment, they do not offer medical evidence that Rose's duties aggravated his heart condition beyond natural progression.

The PEB is required to consider "accepted medical principles" in making a determination of service aggravation. AR 635–40 ¶ 4-19(e)(2). The PEB evaluated Rose's heart condition in light of his service responsibilities and concluded that Rose's duties did not aggravate his condition. This finding was based upon the medical knowledge of the board, medical evaluations provided by the MEBD and Rose's cardiologist, and medical principles as exemplified by the board's reference to a medical textbook. In the absence of any contrary medical evidence proffered by plaintiff, it cannot be said that the PEB acted in a manner that was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

■ Plaintiff's medical evidence of deteriorating health during the spring of 1991 and the non-medical opinions of his supervisors that Rose's condition was attributable to his duties are not sufficient to invalidate the PEB's determination that plaintiff's condition was the result of the natural progression of his congenital heart disease. When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board. *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985); *Heisig,* 719 F.2d at 1156; *See also Holman v. United States,* 181 Ct.Cl. 1, 8, 383 F.2d 411, 415 (1967).

Plaintiff has presented no new evidence to this court that the PEB did not consider in reaching its decision. Plaintiff argues that the PEB's decision is not supported by substantial evidence—that the PEB was simply wrong. This argument is without merit. The PEB had substantial evidence upon which to base its conclusion, and did not act in a manner that would require this court to overturn the decision. After a careful review of the record and the parties' arguments, the court finds sufficient support to sustain the PEB ruling.

## IV. Plaintiff's Involuntary Recall Claim

■ In addition to plaintiff's claim that the PEB ignored compelling evidence that his condition was aggravated by his service, plaintiff opposes defendant's motion by alleging that he was recalled involuntarily, and that the recall violated Army regulations. Plaintiff points to AR 40–501 ¶ 6–19, entitled "Standards of Medical Fitness" which lists medical unfitness standards for mobilization to active duty. Plaintiff claims that he should have been rejected for recall to active duty because of his preexisting heart condition. Paragraph 6–1 explains the chapter as listing medical conditions and physical defects "which are causes for rejection for entry into the service during mobilization," but no where in the provisions is rejection mandated.

Nothing in the administrative record indicates that plaintiff raised this allegation before the PEB or any other board. Plaintiff states in his counter-statement of facts that he was recalled involuntarily and "over his objection." (Pl.'s Cntr.Stmt.Facts at ¶ B). However, to support his claim, Rose only cites to the order recalling him to active duty, which contains no mention that Rose objected to the recall. Plaintiff never sought recovery of disability retirement pay, or any other relief, from the PEB or any other board for the alleged improper recall. As

such a claim does not begin to run until a board has acted or declined to act, some exhaustion of remedies is necessary in order to bring such a case to this court. *See Cook v. United States,* 32 Fed.Cl. 783, 786 n. 4 (1995) (citing *Mitchell v. United States,* 26 Cl.Ct. 1329, 1331 (1992), *aff'd,* 1 F.3d 1252 (Fed.Cir.1993)). Furthermore, a court will go beyond the record to hear new evidence and argument only if it was unavailable below or if "plaintiff makes a 'strong showing of bad faith or improper behavior' that creates 'serious doubts about the fundamental integrity' of the administrative action." *Wyatt v. United States,* 23 Cl.Ct. 314, 319 (1991) (quoting *Long v. United States,* 12 Cl.Ct. 174, 177 n. 2 (1987)). As plaintiff did not raise this claim during the administrative process, he may not do so now before this court.

## CONCLUSION

The court finds that the PEB decision to deny disability retirement pay to plaintiff for a preexisting heart condition, not aggravated by service was not arbitrary, capricious, or contrary to law or regulation. The PEB drew reasonable conclusions from the facts before it and had sufficient medical evidence to support its findings of no service aggravation. Although sympathetic to plaintiff's condition, the court is bound to uphold the PEB's decision unless plaintiff satisfied the heavy standard for reversal. Plaintiff clearly did not meet that burden. The court thus sustains the PEB decision and grants defendant's motion for judgment upon the record. The Clerk is directed to dismiss the complaint. No costs.

**IT IS SO ORDERED.**