365 F.3d 1345
 BANKNOTE CORPORATION OF AMERICA, INC., Plaintiff, and
Guilford Gravure, Inc., Plaintiff-Appellant,
v.
UNITED STATES, Defendant-Appellee, and
Avery Dennison Corporation Security Printing Division, Inc., Defendant-Appellee, and
Sennett Security Products, LLC, Defendant-Appellee, and
Ashton-Potter (USA), Ltd., Defendant-Appellee.
 No. 03-5104.
 United States Court of Appeals, Federal Circuit.
 April 26, 2004.
 
 COPYRIGHT MATERIAL OMITTED Michael J. Schaengold, Patton Boggs LLP, of Washington, DC, argued for plaintiff-appellant Guilford Gravure, Inc. With him on the brief was Norah D. Molnar.
 Sonia M. Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director. Of counsel was Timothy P. McIlmail, Attorney.
 Claude P. Goddard, Jr., Wickwire Gavin, P.C., of Vienna, VA, for defendant-appellee Avery Dennison Corporation Security Printing Division, Inc. With him on the brief was David P. Hendel.
 James C. Fontana, David, Brody & Dondershine, LLP, of Reston, VA, argued for Sennett Security Products, LLC.
 Shlomo D. Katz, Epstein Becker & Green, P.C., of Washington, DC, argued for defendant-appellee Ashton-Potter (USA), Ltd.
 Before LOURIE, Circuit Judge, PLAGER, Senior Circuit Judge, and PROST, Circuit Judge.
 PLAGER, Senior Circuit Judge.
 
 
 1
 This is a post-award bid protest case. The principal issue is whether the contracting officer applied the proper standards when evaluating bids in a `best value' procurement. The case turns on the correct interpretation of a solicitation issued by the United States Postal Service (USPS) for the printing, finishing, and packaging of United States postage stamps. Guilford Gravure, Inc. (Guilford), one of the unsuccessful bidders, appeals the judgment of the United States Court of Federal Claims in the Government's favor. We disagree with Guilford's interpretation of the solicitation and conclude that the contracting officer acted within the scope of his discretion by not awarding a contract to Guilford. We have considered and reject Guilford's other arguments, and we therefore affirm the judgment of the Court of Federal Claims.
 
 BACKGROUND
 
 2
 The solicitation for this procurement, referred to as "Multi-Print III" (MP-III), stated that the USPS intended to award no more than three contracts. Bidders were instructed to submit proposals for printing various stamp products using one or more of the following printing methods: gravure, intaglio, offset, or a combination of offset or gravure with intaglio. The solicitation did not require offerors to possess or propose to use all of the printing methods and did not indicate that any method was preferred over the others.
 
 
 3
 As indicated in two separate sections of the solicitation, contract awards would be based on a `best value' determination. First, Section 2.4 (entitled "Evaluation") in the body of the solicitation reads:
 
 
 4
 The Postal Service will award a contract resulting from this solicitation to the offeror whose offer conforming to the solicitation is deemed to offer the Postal Service the best value, price and other factors as specified considered. The following factors will be used to evaluate offers:
 
 
 5
 Number Evaluation Factor

1 Past Performance
1A Experience of the Overall Organization
2 Supplier Capabilities
2A Quality Assurance and Security &
 Accountability
2B Production Capabilities
2C Management Capabilities
 
 
 6
 In an attachment to the solicitation labeled "Instructions to Offerors," a section entitled "Contract Award and Proposal Evaluation" reads:
 
 
 7
 As stated in Section 2.4 of this Solicitation, award will be made to the responsible offeror whose proposal offers the best value to the Postal Service, (i.e., a combination of price, price-related factors, and/or other factors). The primary areas to be used in determining which proposal offers the best value to the Postal Service are listed below in descending order of importance:
 
 
 8
 Number Evaluation Factor

1 Past Performance — Experience of the
 Overall Organization
2 Supplier Capabilities — Quality Assurance
 and Security & Accountability
3 Supplier Capabilities — Production
 Capabilities
4 Supplier Capabilities — Management
 Capabilities
 
 
 9
 Past Performance — Experience of the Overall Organization is weighted as more important than any other individual factor. Supplier Capabilities — Production Capabilities and Supplier Capabilities — Management Capabilities are weighted equally.
 
 
 10
 Cost/price will be considered in the award decision, although the award may not necessarily be made to that offeror submitting the lowest price.
 
 
 11
 After receiving proposals from five prequalified contractors[1] — Guilford, Banknote Corporation of America (BCA), Sennett Security Products, LLC (Sennett), Avery Dennison Corporation (Avery Dennison), and Ashton-Potter (USA), Ltd. (Ashton-Potter) — the USPS awarded contracts to Sennett, Avery Dennison, and Ashton-Potter. The contracting officer issued an Awards Memorandum in which he explained the basis for the award decision. According to the Awards Memorandum, the five contractors were ranked in two categories — (1) Aggregate Price Analysis and (2) Technical Evaluation, the latter prepared by a technical evaluation committee based on a point system. The contracting officer then performed a `best value' determination in accordance with section 4.2.5.d of the USPS Purchasing Manual, entitled "Best Value Determinations."
 
 
 12
 In explaining the results of his best value analysis, the contracting officer indicated that two of the successful bidders were "strong" best value selections. A third successful bidder was described as "a good best value selection and a solid fit with the two preceding selections." While the third bidder lacked immediate capability in the gravure printing method, the technical evaluation committee believed that capability would improve after the first year once the bidder developed a relationship with its proposed subcontractor. This bidder also had proven capability in the offset printing method.
 
 
 13
 With respect to Guilford's proposal, the contracting officer recognized Guilford's strong ranking in the technical evaluation, but noted that Guilford "maintained a rather high pricing profile, which was only modestly improved after discussions." In concluding that Guilford should not be awarded a contract, the contracting officer explained: "In a reasonable judgment, the additional cost does not offset the offered capacity and capability. Given the strong gravure capability and capacity at both [the two strongest bidders], the program is not compelled to accept added similar capability at a higher cost."
 
 
 14
 While the Awards Memorandum did not indicate the relative weights given to the technical and pricing evaluations, the contracting officer stated during a debriefing following the contract award that he placed the pricing and technical evaluations in "buckets" of equal weight. He further commented that the best value determination was a subjective judgment on his part with no specific formula.
 
 
 15
 Guilford and BCA filed separate complaints in the Court of Federal Claims challenging the USPS's decision to award contracts to the three successful bidders — Sennett, Avery-Dennison, and Ashton-Potter. The trial court consolidated the two actions and granted motions by the three contract awardees to intervene. The parties filed cross-motions for judgment on the administrative record.
 
 
 16
 Following oral argument, the trial court addressed plaintiffs' numerous arguments in a thorough opinion. Banknote Corp. of Am., Inc. v. United States, 56 Fed. Cl. 377 (2003). Guilford's appeal challenges only some of the trial court's rulings. With respect to the primary focus of Guilford's appeal — the contracting officer's best value determination — the trial court concluded that the contracting officer properly accorded equal weight to the technical and pricing evaluations and therefore the contract award decision was not arbitrary or capricious. The trial court also rejected Guilford's contentions that the USPS failed to conduct meaningful discussions, relied on unstated evaluation criteria in rating the contractors' proposals, and failed to properly document the rationale for its decision. The trial court denied plaintiffs' motions for judgment on the administrative record and granted the Government's cross-motion for judgment on the administrative record.
 
 
 17
 Guilford appeals the judgment of the Court of Federal Claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
 
 DISCUSSION
 I. Legal Standards
 
 18
 A. Bid Protests Under the Administrative Dispute Resolution Act
 
 
 19
 The Court of Federal Claims has jurisdiction to review both pre-award and post-award bid protests pursuant to 28 U.S.C. § 1491(b), enacted as part of the Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104-320, 110 Stat. 3870. That provision allows an "interested party" to file an action in the Court of Federal Claims objecting to "a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). When the ADRA first took effect, it provided the Court of Federal Claims and the district courts of the United States with concurrent jurisdiction over such actions. The jurisdiction of the district courts subsequently terminated on January 1, 2001, pursuant to a sunset provision in the ADRA. Pub.L. No. 104-320, § 12(d), 110 Stat. at 3876. This action was brought in the Court of Federal Claims in April 2003.
 
 
 20
 Under the ADRA, the Court of Federal Claims "review[s] the agency's decision pursuant to the standards set forth in section 706 of title 5," i.e., the standards found in the Administrative Procedure Act (APA). 28 U.S.C. § 1491(b)(4). Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed.Cir.2000) (noting that bid protests do not present an agency record derived from a hearing and thus the "substantial evidence" standard of § 706(2)(E) does not apply). In bid protest cases filed under the ADRA, the court implements this APA standard by applying the standard as previously interpreted by the district courts in the so-called Scanwell line of cases, referring to the 1970 case upholding district court APA review of Government procurement decisions. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1331-32 (Fed.Cir.2001) (citing Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C.Cir.1970), and explaining the history of judicial review of Government procurement decisions).
 
 
 21
 Under the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Id. at 1332. When a challenge is brought on the first ground, the test is "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a `heavy burden' of showing that the award decision had no rational basis." Id. at 1332-33 (citations omitted). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." Id. at 1333. To establish prejudice under this second ground, a protester must show that there was a "substantial chance" it would have received the contract award absent the alleged error. Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed.Cir.2001); Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed.Cir.1999).
 
 
 22
 When the agency involved is the USPS, there is some question whether the above standard applies to its bid protests. This is because actions by the USPS are not normally subject to APA review. See 39 U.S.C. § 410(a); Emery, 264 F.3d at 1084. In Emery, we held that the Court of Federal Claims possesses jurisdiction over bid protest actions involving the USPS, id. at 1083-84, but we declined to decide whether 39 U.S.C. § 410(a) trumps the ADRA's mandate to apply the APA standard of review. Id. at 1085. Neither party in that case contested the application of the APA standard; if we held that the Court of Federal Claims had jurisdiction over the suit under 28 U.S.C. § 1491(b), the parties assumed APA review applied. Because the judicial review provisions of the APA are not jurisdictional, both parties were deemed to have waived any arguments concerning the effect of 39 U.S.C. § 410(a) on APA review. Accordingly, we decided that case by applying the APA standard of review as described above. Id. We shall do the same in the case before us because the parties do not contest the applicability of the APA standard.
 
 
 23
 The reference to the APA standard of review in § 1491(b)(4), quoted at the beginning of this discussion, has given rise to a related question — whether the ADRA also adopts the APA requirements for standing.[2] According to § 1491(b)(1), a bid protest suit may be brought by an "interested party." The statute provides no definition of the term "interested party," but the term appears in another statute that applies to Government contract disputes. Under the Competition in Contracting Act (CICA), which governs the bid protest jurisdiction of the General Accounting Office (GAO), a protest may be filed by an "interested party." 31 U.S.C. § 3551(1). The CICA explicitly defines the term as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2).
 
 
 24
 In American Federation of Government Employees, AFL-CIO v. United States, 258 F.3d 1294 (Fed.Cir.2001), this court addressed whether the APA standing requirement or the CICA standard should apply to ADRA bid protests. Under the more liberal APA standard, parties other than actual or prospective bidders might be able to bring suit. Id. at 1301. After reviewing the legislative history, we concluded that Congress intended standing under the ADRA to be limited to disappointed bidders. Id. at 1301-02. We further noted that Congress's decision to use the same term in the ADRA as it did in the CICA supports that interpretation. Id. at 1302. We therefore construed the term "interested party" in accordance with the CICA definition and held that standing under the ADRA is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract."[3] Id.
 
 
 25
 B. Motion for Judgment on the Administrative Record
 
 
 26
 Rule 56.1 of the Rules of the Court of Federal Claims (RCFC) provides for judgment on the administrative record, a procedural tool unique to the Court of Federal Claims. The rule was added to the RCFC in 1996; there is no counterpart in the Federal Rules of Civil Procedure. Rule 56.1(a) specifies that a motion for judgment on the administrative record shall be treated in accordance with the rules governing motions for summary judgment, with the exception that any supplementation of the administrative record shall be by stipulation or by court order only. See Rose v. United States, 35 Fed. Cl. 510, 512 (1996); Nickerson v. United States, 35 Fed.Cl. 581, 588 (1996), aff'd, 113 F.3d 1255 (Fed.Cir.1997) (summary disposition). Thus judgment on the administrative record is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Rose, 35 Fed. Cl. at 512.
 
 
 27
 As the Court of Federal Claims has observed, a motion for judgment on the administrative record is often an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or regulations, thereby presenting no disputed issues of material fact. See Seattle Sec. Servs., Inc. v. United States, 45 Fed. Cl. 560, 566 (2000). Indeed, the central issue raised in the bid protest case before us relates to the correct interpretation of the solicitation issued by the USPS, which is a question of law. See Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997 (Fed.Cir.1996).
 
 
 28
 Since the Court of Federal Claims decides a motion for judgment on the administrative record by applying the summary judgment standard, it follows that we review the court's grant of that motion as we would a grant of a motion for summary judgment. In other words, assuming no disputed issues of material fact, we reapply the summary judgment standard in an independent review to determine whether the moving party is entitled to judgment as a matter of law. See JWK Int'l Corp. v. United States, 279 F.3d 985, 987 (Fed.Cir.2002). Thus, when reviewing a judgment in a bid protest case, our task is to address independently any legal issues, such as the correct interpretation of a solicitation, and then to determine whether there are any genuine issues of material fact as to whether the agency decision lacked a rational basis or involved a prejudicial violation of applicable statutes or regulations.
 
 II. The USPS's Best Value Decision
 
 29
 The central issue in this case is whether the contracting officer applied the correct standards when evaluating the submitted bids to determine which of them provided the best value to the Government. Guilford contends the solicitation required the contracting officer to place greater weight on technical factors than on pricing factors; therefore, according to Guilford, the contracting officer erred by placing equal weight on the two evaluation categories. The Government, apparently believing that the USPS is bound by an unrelated USPS bid protest decision, agrees with Guilford's interpretation of the solicitation, but nevertheless argues the Government should prevail because any error committed by the contracting officer did not prejudice Guilford. The three intervenors maintain that the solicitation did not address the relative weight to be given to the technical and pricing categories, and therefore, in accordance with several GAO bid protest cases, the two categories should receive approximately equal weight.
 
 
 30
 Interpretation of the solicitation is a question of law over which we exercise independent review. See Grumman Data Sys., 88 F.3d at 997. We begin with the plain language of the document.[4] Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed.Cir.2003) (en banc). The solicitation is ambiguous only if its language is susceptible to more than one reasonable interpretation. See Grumman Data Sys., 88 F.3d at 997. If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning; we may not resort to extrinsic evidence to interpret them. Coast Fed. Bank, 323 F.3d at 1038. Finally, we must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions. Id.
 
 
 31
 We begin by examining the language of the two provisions that describe the `best value' evaluation process. Section 2.4 of the solicitation states that the USPS will award a contract to the offeror whose proposal offers the USPS the best value, "price and other factors as specified considered." A list of several technical evaluation factors follows, with no mention of price. Understood in its proper context, the list of technical factors represents the "other factors as specified"; the absence of pricing factors from the list does not mean price is not to be considered or is to be given less weight than technical factors. The plain language of Section 2.4 simply does not state the relative weights of the technical and price categories.
 
 
 32
 The second provision, the "Contract Award and Proposal Evaluation" section, appears in an attachment to the solicitation that sets forth instructions to the offerors. This Contract Award provision begins with a reference to Section 2.4 ("As stated in Section 2.4 of this Solicitation ..."), and then states that an award will be made to the offeror whose proposal offers the best value, "i.e., a combination of price, price-related factors, and/or other factors." The next sentence lists in descending order of importance the "primary areas to be used in determining which proposal offers the best value"; the list contains the same technical factors as those listed in Section 2.4, again without mention of price.
 
 
 33
 Guilford argues that because price was not included among the "primary areas" specified in the second provision, the plain language of the solicitation provides that technical factors are more important than price in the best value determination. We disagree. It is improper to view the list of "primary areas" in isolation. If we consider the solicitation as a whole, as we must, it is apparent from the reference to Section 2.4 that the Contract Award provision restates the information provided in Section 2.4, albeit with slightly different language. Viewed in that light, the "primary areas" correspond to the technical evaluation factors set forth in Section 2.4, and the absence of pricing factors from the list of "primary areas" does not suggest that price is less important than the technical evaluation criteria. The list of "primary areas" shows the relative significance of the specified technical factors to each other, but does not indicate the relationship between those technical factors and price.
 
 
 34
 To be sure, the USPS Purchasing Manual states that a solicitation must indicate both the relative significance of the identified technical evaluation factors and the relationship of those factors to the cost or price factors. USPS PM 2.1.10.b. The Purchasing Manual further provides that the relationship between technical and price factors should be stated in general terms, e.g., that price will be considered to be "more important, less important, or as important" as the technical evaluation factors. USPS PM 2.1.10.d. In this case, neither Section 2.4 nor the Contract Award provision expressly states such a relationship between technical and price factors. Indeed, the "primary areas" language upon which Guilford relies does not discuss price factors at all. Thus, although the Purchasing Manual instructs the contracting officer to state in the solicitation the relative importance of technical factors as compared to price, the solicitation in this case does not include such a statement.[5]
 
 
 35
 Based on our independent reading of the solicitation as a whole, we conclude that the plain language of the solicitation does not set forth the relationship between price and technical factors to be used in the best value determination. This is not an ambiguity, as there is no language in the solicitation susceptible to more than one reasonable interpretation. As noted, the list of "primary areas" makes no mention of price factors, and it is therefore unreasonable to interpret that provision as stating any relationship between price and technical factors. And because the solicitation does not contain ambiguous language, we may not look to the extrinsic evidence cited by Guilford, such as the MP-III Purchase Plan, which is an internal USPS document not available to offerors, and the USPS's course of conduct in previous postage stamp procurements.
 
 
 36
 The USPS's decision in Novadyne Computer Systems, Inc., P.S. Protest No. 90-49 (Nov. 9, 1990), does not compel a different interpretation. In that case, Novadyne contended that the contracting officer erred by giving greater weight to technical factors than price factors in a best value determination. The USPS General Counsel denied Novadyne's bid protest, concluding that three passages in the solicitation showed that technical factors were more important than price. One of those passages stated that "[t]he primary areas to be used in determining which proposal is most advantageous to the Postal Service are listed below in Section M.8 in descending order of importance"; Section M.8 then listed only technical evaluation factors. Admittedly this language is quite similar to the "primary areas" provision in the MP-III solicitation. The Novadyne solicitation, however, contained another passage stating that "[t]echnical superiority will be the governing factor in award." This explicit language, or anything similar, is absent from the MP III solicitation, and therefore the case before us is easily distinguished from the Novadyne decision. In any event, neither this court nor the Court of Federal Claims is bound by Novadyne, a decision by the USPS General Counsel.
 
 
 37
 Guilford relies heavily on what it refers to as the Government's "admission" that the contracting officer erred by weighing price and technical factors equally, contrary to the Government's interpretation of the solicitation as requiring more weight to be placed on technical factors. At trial, the Government took the position that it was bound by the Novadyne decision to interpret the MP-III solicitation as placing greater weight on technical factors than price factors due to the similarity of the language stating the "primary areas" to be used in making a best value determination. The Government continues to take this position on appeal, yet acknowledges that the Court of Federal Claims was not bound by Novadyne, and readily admits that the solicitation in Novadyne contained additional language upon which the USPS General Counsel relied.
 
 
 38
 As discussed above, the Novadyne decision is distinguishable, so we cannot accept the Government's view that the USPS decision in that case controls here. Furthermore, contrary to Guilford's assertion, the Government has not made a factual admission; rather, it has taken a litigation stance on an issue of law — the interpretation of the solicitation. Guilford's attempt to convert the Government's position to a binding judicial admission fails for at least two reasons. First, Guilford erroneously argues that the Government's position is relevant to resolve a latent ambiguity in the solicitation. As previously discussed, the solicitation is not ambiguous. Second, even if we held the solicitation to be ambiguous and looked to extrinsic evidence to determine the Government's intent at the time of drafting, see Dureiko v. United States, 209 F.3d 1345, 1356 (Fed.Cir.2000), the Government's position is merely a legal theory developed during litigation, not a contemporaneous interpretation of the solicitation.
 
 
 39
 The question remains whether the contracting officer's decision to weigh technical and price factors equally had a rational basis in view of the solicitation's silence regarding the relationship between the technical and price evaluations. It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value. See TRW, Inc. v. Unisys Corp., 98 F.3d 1325, 1327-28 (Fed.Cir.1996); E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed.Cir.1996); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 958-59 (Fed.Cir.1993). The issue here is whether the contracting officer acted within the scope of that discretion.
 
 
 40
 The trial court cited a number of GAO bid protest cases holding that when "a solicitation indicates that price will be considered, without explicitly indicating the relative weight to be given to price versus technical factors, price and technical considerations will be accorded approximately equal weight and importance in the evaluation." CardioMetrix, B-258108, 94-2 C.P.D. ¶ 191 (1994); see also Logicon RDA, B-252031, 93-2 C.P.D. ¶ 179 (1993); B-233384, 89-1 C.P.D. ¶ 240 (1989); Actus Corp./Michael O. Hubbard, B-225455, 87-1 C.P.D. ¶ 209 (1987). While neither the USPS nor this court is bound by those decisions, we conclude that they provide a reasonable interpretation of a solicitation that does not explicitly state the relative weights of technical and price factors. In view of those decisions, the contracting officer in this case made a reasonable judgment when he considered price and technical to be approximately equal and ultimately concluded that the additional cost of Guilford's proposal would not offset its strong technical evaluation.
 
 
 41
 Because we conclude the contracting officer committed no error by according technical and price factors equal weight, we need not address the second part of Guilford's argument — that it was prejudiced by the application of incorrect evaluation criteria. Consequently, we need not consider whether the Government is correct that, even if the solicitation gave technical factors more weight than price, the contracting officer could have or would have made the same award decision, and therefore Guilford has not demonstrated prejudice.
 
 III. Other Issues
 
 42
 Guilford raises on appeal three other issues addressed by the trial court, and also argues that the trial court erred when it refused to allow Guilford to supplement the administrative record. These arguments can be dealt with summarily; we address each in turn.
 
 
 43
 First, Guilford contends the USPS violated procedure by failing to engage in meaningful discussions regarding price. After the contractors submitted their proposals, the contracting officer held discussions with the offerors with respect to prices for some, but not all, of the products identified in the solicitation. Guilford essentially complains that these discussions were defective because they did not address a group of products that accounted for a significant part of the overall price, though a smaller portion of the total product demand. Guilford further complains that during price discussions the contracting officer did not inform Guilford how its overall price compared with the prices of the other offerors.
 
 
 44
 Guilford's arguments are unavailing. Under the USPS Purchasing Manual, in contrast to the FAR, contracting officers are not required to hold discussions with offerors or to point out any shortcomings in their proposals. Compare USPS PM 4.2.5.c.3(a) ("discussions may be held with any supplier" (emphasis added)), and USPS PM 4.2.5.c.3(b) ("After proposal comparisons have been made, further discussions may be held to address any outstanding matters." (emphasis added)), with 48 C.F.R. § 15.306(d)(1) ("Discussions ... must be conducted by the contracting officer with each offeror within the competitive range." (emphasis added)), and 48 C.F.R. § 15.306(d)(3) ("At a minimum, the contracting officer must... indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond." (emphasis added)). The contracting officer in this case had no obligation to conduct pricing discussions with respect to all products or to inform Guilford that its overall price was higher than those of the other contractors. Furthermore, Guilford's position is belied by the fact that Guilford amended its pricing after discussions with the contracting officer.
 
 
 45
 Next, Guilford claims that the contracting officer erred by relying on unstated evaluation criteria when he awarded the third contract to an offeror other than Guilford. In the Awards Memorandum, the contracting officer stated that the third awardee was a "solid fit" with the two strongest best value selections. The contracting officer noted the third awardee's proven capability in the offset printing method and stated that its lack of immediate capacity in the gravure printing method could be compensated by the capacity of the other two awardees in the first year. The contracting officer also stated that Guilford's strong capability and capacity in the gravure printing method was not worth its higher price given the strong capability and capacity of the top two awardees in that method. As a result, Guilford infers that the USPS must have required at least one awardee to have offset printing capability and the awardees' proposals to "fit together," although the solicitation included neither requirement. Guilford implicitly argues that these unstated requirements caused the contracting officer not to award a contract to Guilford because it could provide only gravure capability, which would be provided by the first two awardees.
 
 
 46
 We decline to read so much into the contracting officer's statements. The passages in the Awards Memorandum cited by Guilford merely explain the strengths and weaknesses of the offerors' proposals, as required by the USPS Purchasing Manual. USPS PM 4.2.5.1.a. For example, while addressing the third awardee's technical capabilities, the contracting officer concluded that a perceived weakness — the lack of immediate gravure capacity, which the awardee proposed to use for some products — would be compensated by the first two awardees' capacity. He also cited a strength — the third awardee's proven capabilities in the offset printing method, which it had proposed to use for other products. The contracting officer also addressed Guilford's strength — its strong ranking in the technical evaluation — as well as its main weakness — its "rather high pricing profile," evidenced by the similar capacity and capability offered by other bidders at a lower cost. This analysis supported the contracting officer's discretionary judgment that the additional cost of Guilford's proposal did not offset its capacity and capability. At no point did the contracting officer indicate he did not select Guilford because it did not offer a particular printing method or did not "fit" with the other awardees.
 
 
 47
 Guilford also alleges that the USPS failed to "clearly understand, explain and document the rationale for the best value determination," as required by section 4.2.5.d.3 of the USPS Purchasing Manual. We agree with the trial court that this contention is without merit. The Awards Memorandum is a thorough document detailing and comparing the overall technical and price rankings of the offerors. The contracting officer described why he believed that Sennett, Avery Dennison, and Ashton-Potter represented the strongest best value selections, while Guilford and BCA did not, and explained the relative strengths and weaknesses of the offerors in the evaluation categories underlying the technical rankings. This satisfies the documentation requirements of the Purchasing Manual.
 
 
 48
 Finally, Guilford complains that the trial court erred by denying its motion to supplement the administrative record with a declaration by Guilford's President concerning price discussions held with the USPS. As the trial court determined, the declaration contained no facts or arguments not already present in the administrative record. The trial court did not abuse its discretion in denying the motion.
 
 CONCLUSION
 
 49
 For the foregoing reasons, the judgment of the Court of Federal Claims is
 
 
 50
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 According to section 3.5.2 of the USPS Purchasing Manual (USPS PM), competition may be limited to "prequalified suppliers," which are "firms or individuals whose record of performance in the marketplace (commercial or governmental or both) has demonstrated their ability to perform to consistently high standards of quality and reliability." The USPS Purchasing Manual sets forth the policies and procedures for the USPS's purchasing activities and is incorporated by reference into USPS regulationsSee 39 C.F.R. § 601.100. References herein are to Issue 2 of the Purchasing Manual, published in January 2002. The Purchasing Manual, not the Federal Acquisition Regulations (FAR), applies to USPS procurements.
 
 
 [2]
 Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702
 
 
 [3]
 No party in this case has raised the issue of standing, and we are satisfied that Guilford has standing to challenge the MP-III contract awards. This is not a case in which a contractor failed to submit a proposal or withdrew its proposal, or a case in which a disappointed bidder could not receive the award even if successful in its challenge to the winning bidder's proposalSee Impresa, 238 F.3d at 1334 (citations omitted). Guilford is a disappointed bidder whose direct economic interest was affected by the contract award. See Am. Fed'n, 258 F.3d at 1302.
 
 
 [4]
 The principles governing interpretation of Government contracts apply with equal force to the interpretation of solicitations issued by the Government for such contractsSee, e.g., Grumman Data Sys., 88 F.3d at 997-98 (interpreting a solicitation using contract interpretation rules).
 
 
 [5]
 Guilford has not argued that the solicitation fails to meet the requirements of the Purchasing Manual. We note, however, that cases like this could be avoided by better drafting of solicitations by the USPS