ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Ecology Mir Group, LLC | ) ASBCA No. 63768 |
| | ) |
| Under Contract No. W9126G-20-D-0027 | ) |
| T.O. W9126G-23-F-0161 | ) |

APPEARANCE FOR THE APPELLANT:     Mr. Adham Yusupov
      Chief Executive Officer

APPEARANCES FOR THE GOVERNMENT:     Michael P. Goodman, Esq.
      Engineer Chief Trial Attorney
    R. Lauren Horner, Esq.
    Rachel Fayas, Esq.
      Engineer Trial Attorneys
      U.S. Army Engineer District, Ft. Worth

OPINION BY ADMINISTRATIVE JUDGE EYESTER
PURSUANT TO BOARD RULE 12.2

The U.S. Army Corps of Engineers (Corps) issued a task order to Ecology Mir Group, LLC (EMG) for tree removal, pruning and roadside trimming at Lake O' the Pines, Texas. EMG claimed the Corps misclassified certain services which caused an increase in the cost of performance in the amount of $7,117.58, and that the Corps previously removed these services from a prior task order for these reasons. EMG appeals the contracting officer's final decision (COFD) denying the claim.

EMG elected to pursue this appeal pursuant to the Board's Rule 12.2, Small Claims (Expedited) procedure. Accordingly, this decision shall have no precedential value, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside. 41 U.S.C. § 7106(b)(4)-(5). EMG also pursued this appeal pursuant to Board Rule 11, in which the decision rests upon written evidence without courtroom testimony. Based on the following, we deny EMG's appeal.

FINDINGS OF FACT (FOF)

1. On April 15, 2020, the Corps awarded fixed-priced indefinite delivery, indefinite quantity (IDIQ) Contract No. W9126G20D0027 to EMG (Joint Statement of Facts (JSF) ¶ 1; R4, tab 5 at 87, 89-91,101, 135). The period of performance included a one-year base period and four one-year option periods (JSF ¶ 1; R4, tab 5 at 105).

2. The contract's bid schedule included eight contract line item numbers (CLINs) for the base and option years with estimated quantities and fixed unit prices; the unit prices for each CLIN increased each option year (R4, tab 5 at 92-93). According to the contract, the Corps would pay the contractor monthly, at a per unit price "in accordance with the bid schedule line items" and the payment would be "full compensation" for all labor, tools, materials, transportation and incidentals to complete the work per the attached performance work statement (PWS) (*id.* at 105).

3. CLINs 01AA through 01AE were for several types of tree removal. As relevant here, CLIN 01AF was for tree pruning (branches up to 50' above ground), 01AG for tree pruning (branches over 50' above ground), and 01AH for roadside trimming. (R4, tab 5 at 92-93) With respect to tree removal, the PWS stated the contractor shall cut trees to a stump height not exceeding 12 inches above the ground and remove them from the project (*id.* at 95). With respect to tree pruning, the PWS stated that "[t]here may be one or many branches on each tree that require pruning." On trees marked for pruning, the contractor was to remove "all hanging branches, either dead or alive." (*Id.* at 96) Finally, with respect to roadside trimming, the PWS stated "[t]here are no size classes for trees and branches that shall be trimmed, and there may be few or many branches or trees within each trimming section" (*id.* at 97).

4. The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (OCT 2018) (R4, tab 5 at 125). According to that clause, changes to the "contract may be made only by written agreement of the parties." FAR 52.212-4(c). The contract also included Defense Federal Acquisition Regulation Supplement (DFARS) 252.216-7006, ORDERING (SEP 2019), which provides that orders issued were subject to the terms and conditions of the contract (R4, tab 5 at 138). The first task order issued pursuant to the contract included services for every CLIN (01AF-01AH) (JSF ¶ 7; R4, tab 34 at 289, 292).

5. The agency issued contract Modification No. 01 to exercise option year 1, effective March 10, 2021 (JSF ¶ 9; R4, tab 6 at 139-40). The modification included all CLINs and a statement explaining that only a warranted contracting officer had the authority to issue modifications or change the terms of the contract (R4, tab 6 at 140). The Corps included that statement in all subsequent contract modifications which exercised an option (*see* R4, tabs 7, 12). Subsequently, the agency issued task orders in option year 1 which included services for every CLIN (01AF-01AH) (JSF ¶¶ 10-11; R4, tab 36 at 302, 309; tab 37 at 312, 315).

6. On March 17, 2022, the Corps issued contract Modification No. 02, exercising option year 2, and again included all CLINs (JSF ¶ 12; R4, tab 7 at 156-57). Subsequently, on June 9, 2022, the Corps issued task order W9126G20D0027, with a period of performance of June 13-July 12, 2022. The task order set forth various

quantities of tree removal and tree pruning for CLINs 2001AB-01AG; there were no quantities for CLIN 2001AH, roadside trimming. (*Id.* ¶ 13; R4, tab 8 at 176) On September 9, 2022, the Corps issued a bilateral modification to the task order amending the CLINs (*id.* ¶ 14; R4, tab 10 at 181-82). Specifically, the modification deleted all quantities for CLINs 2001AF and 2001AG (tree pruning) but increased the quantities for all of the tree removal CLINs; there was still no quantity listed for CLIN 2001AH, roadside trimming (*compare* R4, tab 8 at 176, *with* tab 10 at 182). According to the parties, "EMG's subcontractor stated [that] due to a freeze the trimming and pruning would have taken these sub [CLINs] out of scope of the contract" and the Corps agreed and deleted them per the modification (JSF ¶ 14A-B).

7. On February 17, 2023, EMG emailed the Corps to confirm, per the call that day, that for the next task order issued the Corps would be flexible with the period of performance if campers were in the way or the area was not fully blocked off. EMG also expressed appreciation for "incorporation of the [economic price adjustment (EPA)] Clause" in the task order "to allow the 10% increase to the overall contract value for inflation faced towards fuel costs." (R4, tab 11) EMG attached a notice of intent (NOI) and updated pricing spreadsheet and requested the Corps issue a modification incorporating the EPA clause (R4, tab 3 at 20-21). The attached spreadsheet included a 10 percent increase for CLINs 01AA-01AE but inserted "NA" for CLINs 01AF-01AH (R4, tab 4 at 86).

8. Subsequently, the Corps issued unilateral contract Modification No. 03, exercising option year 3, effective April 15, 2023, and again included all CLINs (JSF ¶ 15; R4, tab 12 at 187-88). As relevant here, we find that all of the modifications to the contract exercising option years included CLINs 01AF-AH. In addition, Modification No. 03 increased the unit prices for CLINs 3001AA-3001AE by 10 percent "in accordance with FAR 52.216-2" (R4, tab 12 at 188). The modification did not increase the unit prices for CLINs 3001AF, 3001AG or 3001AH (*compare* R4, tab 5 at 93, *with* R4, tab 12 at 202).

9. On April 19, 2023, the Corps issued task order No. W9126G23F0161, the task order central to the dispute here, in the amount of $20,031 with an effective date of May 1, 2023 (R4, tab 13 at 204-06). The task order set forth various quantities of tree removal and tree pruning for CLINs 3001AA-3001AG, as well as quantities for CLIN 3001AH, roadside trimming (*id.* at 207). The task order utilized the increased unit prices set forth in contract Modification No. 03, and in addition, increased the unit prices for CLINs 3001AF-3001AH by 10 percent (JSF ¶ 16A; R4, tab 13 at 207).

10. The next day, EMG emailed the Corps stating the task order "includes priced out pruning line items." According to EMG, on February 17, 2023, it provided the Corps the pricing sheet for the service items they were proceeding with in this option year and "did not price out pruning services and roadside trimming as we

agreed that there would be no pruning involved." EMG further stated: "The current task order . . . needs to be revised to remove pruning and roadside trimming line items 3001AF, 3001AG, and 3001AH." (R4, tab 14 at 210)

11. On April 20, 2023, the lead natural resource specialist at the Corps asked EMG to "provide any information about the agreement to not include the pruning and roadside trimming line items" because the specialist was unaware of this agreement when preparing the task order. The Corps specialist "had planned on these contract items being included and increased by the EPA clause fuel price adjustment." (R4, tab 15) In response, on April 24, 2023, EMG stated that the matter was discussed during the conference call held on February 17, 2023 and following the call, it sent an email which included a pricing table that did not list prices for pruning and roadside assistance. EMG further stated this issue had been discussed since August 2022. (R4, tab 16 at 214) This email included the February 17, 2023 email showing two attachments (i.e., the NOI and pricing table) (*id.* at 215-16).

12. On April 24, 2023, the Corps specialist emailed the contracting officer and others asking whether this matter was discussed during the February 17, 2023 call. In response, the natural resources manager stated the parties discussed the polar vortex issue regarding the pruning and the EPA clause for fuel. (R4, tab 18 at 219) On April 24, 2023, the Corps specialist emailed EMG explaining that after checking with those in attendance at the February 17, 2023 meeting, there was no record that the Corps agreed to omit CLINs 3001AF, 3001AG and 3001AH from the contract. The Corps acknowledged it de-scoped two CLINs from one task order due to a deep freeze storm in February 2021. However, the Corps stated it issued both this task order and the contract modification exercising option year 3 with a fuel adjustment to the unit price of each CLIN and identified quantities for services in all CLINs for this task order. The Corps asked if EMG could complete the task order as issued. (R4, tab 17)

13. EMG informed the Corps that its vendor could not perform the work in those CLINs and offered to find a different vendor and obtain quotations for the Corps (R4, tab 19). On April 26, 2023, the contracting officer emailed and reminded EMG that the contract was fixed-priced with no provisions or mechanisms for adjusting pricing and it was EMG's responsibility to control cost. The contracting officer stated that the alternative approach to accomplish the services for those CLINs was unacceptable and if EMG did not perform, it was a breach of the task order and contract. The contracting officer further stated that prior to exercising the contract option, he approved EMG's request for consideration of all the effort affected by the current economic condition. (R4, tab 20)

14. EMG responded, explaining again that the February 17, 2023 call was "geared toward [EMG's] concerns of future task orders" and it followed-up the call with an email and pricing which excluded the pricing for line items 3001AF, 3001AG

and 3001AH due to "misclassification of the service requested, liability risks due to campers parked under trees marked for removal, and excess delays faced for roadside trimming with spring/summer traffic build-up." EMG further explained that for the past trees marked for pruning, the Corps requested removal of 80 percent of the tree branches due to freezing temperatures of the winter seasons prior and the conditions of the trees, and therefore those trees should have been classified as tree removal, not tree pruning as more work needed to be done. EMG stated its subcontractors and employees refused to prune and perform roadside trimming due to safety factors and the misclassification of the work as pruning and not removal. EMG further explained that its quotation for tree pruning was removal of 1-2 branches, not 80 percent. EMG offered to conduct site visits prior to accepting work under these line items to ensure it was within the budgeted cost. (R4, tab 21 at 228)

15. On August 24, 2023, EMG emailed the Corps, including the contracting officer, reiterating the prior events regarding CLINs 3001AF-3001AH. According to EMG, after sending the February 17, 2023 email, the contracting officer requested a breakdown of unit costs to evaluate the elements for each unit price EMG proposed to increase. EMG explained that on April 6, 2023, the contracting officer stated he could only apply the 10 percent EPA increase to the option year 3 line items and would review pricing again prior to exercising option year 4. EMG noted it completed the work on the task order and was seeking compensation for the increased cost. (R4, tab 26 at 268-69) EMG attached an invoice showing the additional money requested for each of the three CLINs at issue, for a total of $7,117.58 (*id.* at 271).

16. On August 24, 2023, the Corps emailed EMG and stated the task order was fixed-priced and included EMG's requested increase for certain CLINs (R4, tab 27). EMG responded again and stated it did not price out an increase for pruning and roadside trimming which the government had, in the past, agreed not to have EMG perform, and the rates for those services increased from its initial quotation in 2020 (R4, tab 28). On August 28, 2023, the Corps acknowledged that on a prior task order, EMG contested that the tree pruning following the polar vortex deep freeze resulted in different work conditions and increased work per tree to prune than the average conditions expected in the quotation. The Corps stated that in that instance, it removed the quantities for pruning and increased the quantities for tree removals. However, the Corps stated it never agreed to not request the pruning and roadside services as they are needed and considered "an important component" of the contract. (R4, tab 29)

17. EMG submitted its claim on September 18, 2023, iterating its prior arguments that EMG submitted pricing to the Corps showing increased costs for CLINs 01AA-01AE and no costs (or not applicable) for CLINs 01AF-01AH (tree pruning and roadside trimming). According to EMG, the contracting officer sought a breakdown of the unit costs, which EMG provided and informed EMG he could only apply the 10 percent increase to option year 3 line items. EMG agreed to this, but after

the task order was issued showing work for CLINs 01AF-01AH, EMG informed the Corps it did not price those line items. (R4, tab 4 at 83) EMG subsequently performed the work, but at an increased price and again sought the additional $7,117.58 (*id.* at 84).

18. The contracting officer denied the claim on October 27, 2023, stating the Corps adjusted the prices for CLINs 3001AA-3001AE when it exercised option year 3, as requested by EMG and per FAR 52.216-2 (R4, tab 3 at 11). The contracting officer further stated EMG did not request a price increase for CLINs 01AF-01AH but inserted "NA" for those items and the Corps did not find any record, and EMG did not provide evidence, of an agreement to omit CLINs 01AF-01AH from the contract. Further, the Corps never descoped those line items from the contract as they are needed services. The contracting officer explained that when it issued the task order, it included a 10 percent increase for all line items, including CLINs 01AF-01AH. (*Id.* at 12) In addition, the contracting officer concluded that none of the work ordered was outside the scope of the contract. For example, the PWS stated one or many branches may need to be pruned, EMG had performed tree pruning and roadside services successfully on three prior task orders, and the quantities ordered in this task order were comparable to those in the prior task orders. (*Id.* at 11-12) The contracting officer stated higher subcontractor costs are not a basis for an equitable adjustment on a fixed-priced contract and EMG provided no evidence to justify a 259 percent increase for CLIN 01AF, a 93 percent increase for CLIN 01AG, and a 78 percent increase for CLIN 01AH (*id.* at 12).

19. EMG timely appealed on November 28, 2023.

DECISION

EMG contends it is entitled to the increased costs for the services performed pursuant to CLINs 3001AF-3001AH because they are out of scope, specifically that any tree pruning should be reclassified as tree removal due to freezing temperatures in prior winter seasons (R4, tab 4 at 83; tab 21 at 228).[1] EMG also argues that its employees were unwilling to provide the work due to this misclassification and safety factors, that its quotation for pruning was for removal of only 1-2 branches, and that the Corps removed these CLINs from a prior task order due to the same concerns, which is why EMG did not submit a price adjustment for those CLINs to the contracting officer (R4, tab 21 at 228; Notice of Appeal at 1).

In response, the Corps argues this was a fixed-priced contract which contained agreed-upon prices for a base and options years and EMG therefore bears the risk of

---

[1] EMG requested the Board use its REA as its initial brief (*see* Bd. corr. ltr. dtd. April 4, 2024).

any increased costs of performance (gov't reply at 5-6). The Corps also argues while the contracting officer increased pricing on several CLINs pursuant to the EPA clause, he never added the clause to the contract and EMG never provided consideration for inclusion of the clause. Therefore, that clause is irrelevant to the appeal. (*Id.* at 6-7) The Corps further states the government never agreed to remove these CLINs from the contract or task order, and the removal of the CLINs from a previous task order does not equate to removal or descoping of the contract (*id.* at 8).

The contract here included fixed unit priced CLINs for the base and options, the price of which increased each option year (FOF ¶¶ 1-2). EMG was to be paid per the stated unit price, and this payment was full compensation for the work performed (*id.*). Therefore, this contract was fixed-priced and per the FAR, the risk of increased performance costs, absent a contract provision providing otherwise, falls on the contractor. *See Amentum Servs., Inc., f/k/a AECOM Mgmt. Servs., Inc.*, ASBCA No. 62835 *et al.*, 23-1 BCA ¶ 38,453 at 186,895; FAR 16.202-1 ("A firm-fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract [and] places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss.").

The record shows that the only agreed upon increase in the fixed unit prices was the 10 percent price adjustment for CLINs 01AA-01AE. First, EMG's February 17, 2023 email discusses only the EPA clause and 10 percent price adjustment for fuel costs (*see* FOF ¶ 7). Second, EMG's pricing spreadsheet stated "NA" for a price increase for CLINS 01AF-01AH (*id.*). Accordingly, the contracting officer only increased the pricing of CLINs 3001AA-3001AF by 10 percent "in accordance with FAR 52.216-2" when exercising option year 3 (*id.* ¶ 8). The purpose of an economic price adjustment in a fixed-priced contract is "to protect the contractor and the Government against significant fluctuations in labor or material costs or to provide for contract price adjustments in the event of changes in the contractor's established prices." FAR 16.203-3. EMG's contention that the Corps misclassified the work does not implicate adjustments pursuant to this clause. In addition, the clause limits the aggregate increases in any unit price to 10 percent of the original unit price. Here, the contracting officer made clear that price increases were limited to 10 percent as agreed by the parties for rising fuel costs (*see* FOF ¶ 7). The contracting officer later increased the remaining CLINs by 10 percent in the task order at issue here (*id.* ¶ 9).

EMG contends that it did not seek a 10 percent price adjustment for CLINs 3001AF-01AH because it was agreed EMG would not perform the work as they were out of scope of the contract. First, there is nothing in the record showing the Corps agreed to remove this work or these CLINs from the contract or task order. In fact, EMG does not contend, nor could it, that the contracting officer modified the contract to remove these CLINs. As noted, the contract incorporated by reference

7

FAR 52.212-4, CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (OCT 2018) which requires changes to the "be made only by written agreement of the parties" (FOF ¶ 4). Further, all contract modifications reminded EMG that only the contracting officer could make changes to the contract (*id.* ¶ 5). There is no written agreement here showing the contracting officer removed these services from the contract (*see id.* ¶¶ 5-6, 8). The Corps explained it still needed the services, as evidenced by the modifications including them and the subsequent task orders requiring them (*id.* ¶¶ 9, 11-12, 16). As these CLINs were not removed from the contract, the Corps could still issue task orders seeking these services (*see id.* ¶ 4).

Second, the record does not support EMG's argument that the work was out of scope. EMG argues the trees marked for pruning should really have been marked for removal due to freezing temperatures in the prior years, and its quotation for tree pruning was removal of 1-2 branches, not 80 percent of the tree branches as it contends the Corps required (FOF ¶ 14). In interpreting a contract, we begin with the plain language. *See, e.g.*, *Banknote Corp. of America, Inc. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004).

Here, the PWS states that for tree pruning, there could be "one or many branches on each tree" requiring pruning, and further, that EMG was to remove "all hanging branches, either dead or alive" (FOF ¶ 3). Likewise, for roadside trimming the PWS stated there were no size classes for trees and branches and there "may be few or many branches or trees within each trimming section" (*id.*). In comparison, for tree removal the PWS required EMG cut and remove the trees to a maximum stump height of 12 inches above the ground (*id.*). Contrary to EMG's contentions, the plain language of the PWS does not limit pruning or roadside trimming to only 1-2 branches and explains that many branches may be, and all hanging must be, pruned.[2]

We note that while the Corps did remove the pruning services from one task order and increased the services for tree removal due to a deep freeze or polar vortex (FOF ¶ 6), this does not mean the Corps removed them from the contract or even intended to remove them from the contract or future task orders. In other words, there was no prior course of dealing establishing that EMG would never have to perform those services after removal from one task order.

To establish a prior course of dealing, and "extinguish an otherwise explicit contract requirement" there must be "actual knowledge by both parties of consistent conduct by one party in its contractual dealings with the other over an extended period of time regarding a particular contract provision upon which the other is reasonably

---

[2] To the extent EMG is arguing there was a differing site condition pursuant to FAR 52.236-2, we note that FAR clause was not included in this contract (*see* R4, tab 5) and EMG's claim contains only cursory allegations regarding that matter.

entitled to rely." *Raytheon Co.*, ASBCA Nos. 60448, 60785, 20-1 BCA ¶ 37637 at 182,733-34 (quoting *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982 at 168,085-86). Further, the prior course of dealing must represent a "reflection of the joint or common understanding" of the parties. *Id.* at 182,734 (quoting *T&M Distribs.*, ASBCA No. 51405, 00-1 BCA ¶ 30,677 at 151,509 (further citations omitted)). To show waiver of a contract requirement through a prior course of dealing, a contractor must show that the current contract and prior course of dealing involved the same contracting agency, the same contractor, and essentially the same contract provision. *Id.* (citations omitted). While here we have the same agency, contractor and contract, there was only one instance regarding removal of these services from a task order which did not happen over an extended period of time and there is no joint or common understanding of the parties on this matter. *See e.g.*, *Pyrotechnic Specialties, Inc*, ASBCA No. 57890 *et al.*, 17-1 BCA ¶ 36,696 at 178,706 (two varying instances of rescreening were insufficient to establish consistent conduct by the government in its contract dealings with the contractor over an extended period of time). Thus, there is no prior course of dealing evidencing the agency waived performance under these CLINs.

We have considered all arguments and conclude EMG is not entitled to compensation for the costs claimed.

<u>CONCLUSION</u>

For the reasons stated above, the appeal is denied.

Dated: April 26, 2024

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

9

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63768, Appeal of Ecology Mir Group, LLC, rendered in conformance with the Board's Charter.

Date:  April 26, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals